

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:    COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/734,857 | 10/23/96 | MCELVANEY                  D | |

LM02/0421

MAX STUL OPPENHEIMER
P O BOX 50
STEVENSON MD 21153

| EXAMINER |
|---|
| HOOSAIN, A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2742 | 10 |

DATE MAILED:    04/21/99

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

1- File Copy

USR000491

| *Office Action Summary* | Application No. 08/734,857 | Applicant(s) McElvaney | |
|---|---|---|---|
| | Examiner Allan Hoosain | Group Art Unit 2742 | |

☒ Responsive to communication(s) filed on *Mar 12, 1999* _____ .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ____3____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

  ☒ Claim(s) *1-7* _____ is/are pending in the application.

     Of the above, claim(s) _____ is/are withdrawn from consideration.

  ☐ Claim(s) _____ is/are allowed.

  ☒ Claim(s) *1-7* _____ is/are rejected.

  ☐ Claim(s) _____ is/are objected to.

  ☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

  ☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

  ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

  ☐ The proposed drawing correction, filed on _____ is ☐approved ☐disapproved.

  ☐ The specification is objected to by the Examiner.

  ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

  ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All ☐ Some* ☐None  of the CERTIFIED copies of the priority documents have been

      ☐ received.

      ☐ received in Application No. (Series Code/Serial Number) _____ .

      ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____ .

  ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

  ☒ Notice of References Cited, PTO-892

  ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

  ☐ Interview Summary, PTO-413

  ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

  ☐ Notice of Informal Patent Application, PTO-152

*--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---*

USR000492

Serial Number: 08/734,857                                                                    Page 2

Art Unit: 2742

## DETAILED ACTION

### Withdrawal of Finality of Last Office Action

The finality of the rejection of the last Office action is withdrawn based on the information in

Paper # 9, dated 3/12/99.

### *Oath/Declaration*

It does not identify the post office address of each inventor and it does not say whether the given

residence address is the same as Inventor's Post Office address.  A post office address is an

address at which an inventor customarily receives his or her mail and may be either a home or

business address.  The post office address should include the ZIP Code designation.

### *Claim Rejections - 35 USC § 103*

1.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

USR000493

Serial Number: 08/734,857                                                    Page 3

Art Unit: 2742

2.      Claims 1-6 rejected under 35 U.S.C. 103(a) as being unpatentable over **Schindler et al**.
(US 5,675,390).

As to Claims l,7, with respect to Figures 6-7, 16, **Schindler et al.** teach a home entertainment
system (digital network telephony device) comprising:
a phone voice I/O, 1622, but not a telephone handset, inherently comprising a microphone and a
speaker, said microphone being inherently connected to at least two microphone wires and said
speaker being inherently connected to at least two speaker wires (Col. 20, lines 52-54);
a computer system, Figures 1 and 3, comprising a computer sound card, 320, having an input
jack, 620, and an output jack, 618, and Mixer and Codec means, 616, for receiving and
transmitting digital audio signals, Synthesis means, 610 and 612, for compressing and
decompressing said audio signals, Modem means, 1526, for transmitting compressed audio signals
to a digital network, Modem means, 1526, for receiving compressed audio signals from said
digital network (Figure 15); and
coupling means for inherently connecting the microphone wires to the input jack and for
connecting the speaker wires to the output jack (Col. 20, lines 51-55);
  **Schindler et al.'s** Phone Voice I/O, 1622, can be interpreted as a telephone set which comprises
a microphone and a speaker.  Therefore, it is obvious to one of ordinary skill in the art, at the time
the invention was made to use a telephone set in place of **Schindler et al.'s** Phone Voice I/O and

USR000494

Serial Number: 08/734,857                                          Page 4

Art Unit: 2742

for connection to a sound card for accomplishing Applicant's invention for a telephone set to be

connected to a sound card.


As to Claim 2, in addition to the information above, **Schindler et al** further teach a home

entertainment system (device) as in claim 1, wherein said coupling means for connecting the

microphone wires to the input jack and for connecting the speaker wires to the output jack

comprises inherently a cable having a phone I/O (four-wire handset jack) at a first end thereof and

two mini-phone plugs at a second end thereof, one of said mini-phone plugs being designated a

microphone plug and being connected to the microphone wires and the second of said mini-phone

plugs being designated a speaker plug and being connected to the speaker wires (Figure 16, 1622

and 320, and Figure 7, 618 and 620).


As to Claim 3, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising a resistive volume control for

controlling the loudness of the speaker (Col. 6, lines 9-23).


As to Claim 4, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising a keyboard, 126, (keytone

generator) operatively connected to the microphone wires (Figure 10 and Col. 14, lines 24-31).

USR000495

Serial Number: 08/734,857                                                    Page 5

Art Unit: 2742

As to Claim 5, in addition to the information above, **Schindler et al**. further teach a home
entertainment system (device) as in claim 1, further comprising an 'power on' external power
supply for powering said microphone (Col. 13, lines 60-65).

As to Claim 6, in addition to the information above, **Schindler et al**. further teach a home
entertainment system (device) as in claim 1, further comprising toggles (an automatic bypass
switch) to deactivate any external speakers and activate the handset microphone and speaker
when the handset is in use (Col. 13, lines 54-60).

### *Conclusion*

3.      The prior art made of record and not relied upon is considered pertinent to applicant's
disclosure.

**Tamura** (US Patent 5,750,911) teaches a computer with an external sound source connected to a
sound card.

**DorEl** (US patent 5,721,951) teaches a PC which has a sound card which is connected to external
sound systems using standard jacks.

USR000496

Serial Number: 08/734,857                                          Page 6

Art Unit: 2742

4.      **Any response to this action should be mailed to:**


            Commissioner of Patents and Trademarks

            Washington, D.C. 20231


        **or faxed to:**

            (703) 308-9051, (for formal communications intended for entry)

        **Or:**

            (703) 308-5403 (for informal or draft communications, please label

            "PROPOSED" or "DRAFT")

        Hand-delivered responses should be brought to Crystal Park II, 2121 Crystal Drive, Arlington. VA.,

        Sixth Floor  (Receptionist).


Any inquiry concerning this communication or earlier communications from the examiner should

be directed to **Allan Hoosain** whose telephone number is (703) 305-4012.  The examiner can

normally be reached on Monday to Friday from 7 am to 5:30 pm.


        If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

**Wellington Chin**, can be reached on (703) 305-4366.

USR000497

Serial Number: 08/734,857                                    Page 7

Art Unit: 2742


     Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 305-3900.


**Allan Hoosain** ΛΗΛ

**Patent Examiner**

**April 20, 1999**

                                                          CHAU NGUYEN
                                                  PRIMARY EXAMINER

| *Notice of References Cited* | Application No. 08/734,857 | Applicant(s) McElvaney | |
|---|---|---|---|
| | Examiner Allan Hoosain | Group Art Unit 2742 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| x | A | 5,675,390 | 10/97 | Schindler et al. | 348 | 552 |
| x | B | 5,633,920 | 5/97 | Kikinis et al. | 379 | 130 |
| x | C | 5,283,638 | 2/94 | Engberg et al. | 348 | 14 |
| x | D | 5,721,951 | 2/98 | DorEl | 395 | 830 |
| x | E | 5,750,911 | 5/98 | Tamura | 84 | 602 |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

## NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| | U | | |
| | V | | |
| | W | | |
| | X | | |

*A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

USR000499



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: McElvaney

Serial No.: 08/734,857          Art Unit:    2742

Filing Date: October 23, 1996   Examiner: Allan Hoosain

For: Internet Telephony Device

NOTICE OF APPEAL

April 21, 1999

To Commissioner of Patents and Trademarks
Sir:

Applicant hereby appeals to the Board of Patent Appeals and
Interferences from the Examiner's decision dated October 23, 1998
finally rejecting all claims.

Applicant is a small entity; a statement of small entity status
has already been filed in this application.  Therefore the fees
should be reduced accordingly.

Authorization to charge our Deposit Account is enclosed herewith.

Respectfully submitted,

Max Stul Oppenheimer
Registration No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 706-1793

USR000500



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: McElvaney

Serial No.: 08/734,857                    Art Unit:    2742

Filing Date: October 23, 1996             Examiner: Allan Hoosain

For: Internet Telephony Device

### PETITION FOR EXTENSION OF TIME

Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D. C. 20231

Sir:

    Applicant hereby petitions for a three month extension
of response time for filing the enclosed response to Office
Action mailed October 23, 1998 finally rejecting all claims.

    The proposed response to be made upon extension of time
is to submit the attached Notice of Appeal.

    Applicant is a small entity; a statement of small
entity status has already been filed in this application.
Therefore the fees should be reduced accordingly.

    Authorization to charge our Deposit Account is enclosed
herewith.


    Favorable action is solicited.

      Respectfully submitted,


Max Paul Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 706-1793

USR000501



AF/GP 2742

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: McElvaney
For:    Internet Telephony Device
Filed: October 23, 1996

**Serial No.: 08/734,857     Art Unit: 2742     Examiner: A. Hoosain**

TRANSMITTAL LETTER

April 21, 1999

Honorable Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D.C. 20231

Sir:

Transmitted for filing in the above-referenced case are:

> **Petition for Extension of Time**
> **Appeal**
> **Certificate of Mailing by Express Mail**
> **Return Postcard**

Applicant is a small entity; a small entity declaration has
previously been filed in this application.

The Commissioner is authorized to charge any additional fees or
credit any overpayment to our Deposit Account No. 15-0620.  A
duplicate copy of this sheet is enclosed.

Respectfully submitted,

Max Stul Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 706-1793

CERTIFICATE OF MAILING BY EXPRESS MAIL
I HEREBY CERTIFY that on the date indicated above, the above-listed document(s) or fee(s) are
being mailed by EXPRESS MAIL, No. EI994619965US, postage prepaid to the Commissioner of Patents
and Trademarks, Washington DC 20231.

EI994619965US

USR000502




# COVER PAGE

**TITLE:**          Internet Telephony Device

**INVENTOR(S):**    McElvaney

**SERIAL NO.:**     08/734,857

**FILING DATE:**    October 23, 1996

**PAPER:**          NOTICE OF APPEAL

**FILED:**          April 21, 1999

**PATENT ATTORNEY:**

MAX STUL OPPENHEIMER
(Registration No. 33,203)
P.O. Box 50
Stevenson, MD  21153
USA

(410)-706-1793

**ATTORNEY DOCKET #: RIPTEL9601**



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: McElvaney
For:    Internet Telephony Device
Filed:  Oct 23 1996

**Serial No.: 08/734,857      Art Unit: 2742      Examiner: Hoosain, A.**

REQUEST FOR RECONSIDERATION

Honorable Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D.C. 20231

Sir:

In response to Office Action dated April 21, 1999, Applicant
respectfully requests reconsideration of the rejection of all
claims.

The core of the rejections rests on the assertion that it would
have been obvious to one of ordinary skill in the art, at the
time the application was filed, to combine the teachings of the
cited patents with the teaching of U.S. Patent 5,675,390, filed
on July 17, 1995 and issued on October 7, 1997 (Schindler et al)
to arrive at a

    <u>digital network telephony device</u> comprising:

        a <u>telephone handset</u> <u>comprising a microphone and a</u>
<u>speaker</u>, said microphone being connected to at least two
microphone wires and said speaker being connected to at
least two speaker wires;

        a computer system comprising a computer sound card
having an input jack and an output jack and <u>means for</u>
<u>receiving and transmitting digital audio signals</u>, means for
compressing and decompressing said audio signals, <u>means for</u>
<u>transmitting compressed audio signals to a digital network</u>,
<u>means for receiving compressed audio signals from said</u>
<u>digital network</u>; and

        means for connecting the microphone wires to the
input jack and for connecting the speaker wires to the
output jack

as recited in applicant's claim 1, and a

USR000504

device for connecting

> a <u>telephone handset comprising a microphone and a speaker</u>, said microphone being connected to at least two microphone wires and said speaker being connected to at least two speaker wires; with
>
> a computer system comprising a computer sound card having an input jack and an output jack and means for <u>receiving and transmitting</u> audio signals, means for compressing and decompressing said audio signals, means for transmitting compressed audio signals to a <u>digital network</u>, means for receiving compressed audio signals from the digital network;
>
> said device comprising a cable comprising two microphone wires and two speaker wires, each wire having a first and a second end, said wires being connected at said first end to a plug adapted to connect to said telephone handset and being connected at said second end to a plug adapted to connect to said computer sound card.

as recited in applicant's claim 7 (emphasis added).

For a proper 103 rejection, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to combine the teachings of the references; this motivation to combine must be found in the prior art and not based on applicant's disclosure.

Applicant respectfully points out that the record does not provide such a motivation.

Central to the rejections is the assertion that element 1622 of the '390 patent (shown in Figure 16) is a telephone-like communication device, for which a telephone handset could have been substituted without an inventive step.

Element 1622 is not described in the specification of the '390 patent and applicant therefore respectfully suggests that the rejection be withdrawn since the reference is not enabling and could not be the basis for one of ordinary skill to combine with the other references.

Moreover, the '390 drawings clearly illustrate the data flow with respect to Element 1622 by a unidirectional arrow, making clear that whatever Element 1622 is, it is not a telephone device since such a device would require that signals flow in two directions.

As established by the affidavit of Dennis M. Bogley, of record in this case, a telephone handset could not operate if connected in place of Element 1622.

Finally, Element 1622 is shown as connected between the output of SOUND/AUDIO DSP (320) and a Modem (322) (which would indicate transmission of an analog signal), while the claimed invention (a) is connected to the input and output of a soundcard which creates a digital signal.

Thus, in order to achieve applicant's invention, one of ordinary skill would have had to have been motivated to:

> 1.  divine that the undescribed Element 1622 of Schindler was in fact a telephony device;
>
> 2.  disregard the plain teaching of Schindler by using a two-way device in place of the unidirectional device;
>
> 3.  replace the analog modem of Schindler with an untaught method of providing a digital signal from the output of the undefined element 1622;
>
> 4.  ignore the requirement of an echo canceller (Schindler element 1518) (note that Applicant teaches the use of a handset, which eliminates the need for this element);
>
> 5.  ignore the deliberate teaching of a unidirectional connection between the sound/audio dsp and a modem, and instead make two connections to a soundcard; and
>
> 6.  provide a means for compressing and decompressing audio data, then determine that the audio data should first be converted to digital data.

Applicant submits that, given the recited advantages of connecting a telephone handset to the input and output of a soundcard in the manner taught by this application, had it been obvious to have made these changes, others would have done so before the date of the pending application.

Applicant therefore requests reconsideration of the application and withdrawal of the rejections of Claims 1 and 7.  All other claims being dependent on Claim 1, they would likewise be allowable.

Respectfully submitted,

Max Stul Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD  21153
410-706-1793

USR000506



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: McElvaney
For:   Internet Telephony Device
Filed: Oct 23 1996

**Serial No.: 08/734,857    Art Unit: 2742    Examiner: Hoosain, A.**

TRANSMITTAL LETTER

July 17, 1999

Honorable Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D.C. 20231

Sir:

Transmitted for filing in the above-referenced case are:

**Request for Reconsideration**
**Certificate of Mailing**

Respectfully submitted,

Max (Stul) Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 706-1793

**CERTIFICATE OF MAILING**

I hereby certify that the above listed attached paper(s) or fee are being deposited with the U.S.
Postal Service with sufficient first class postage on the date indicated above, addressed to the
Commissioner of Patents and Trademarks, Washington, D.C. 20231.

USR000507



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:    COMMISSIONER OF PATENTS AND TRADEMARKS
            Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/734,857 | 10/23/96 | MCELVANEY | D | |

LM02/0819

MAX STUL OPPENHEIMER
P O BOX 50
STEVENSON MD 21153

| EXAMINER |
|---|
| HOOSAIN, A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2742 | 15 |

DATE MAILED:
08/19/99

Please find below and/or attached an Office communication concerning this application or
proceeding.

Commissioner of Patents and Trademarks

USR000508

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Office Action Summary*** | 08/734,857 | McElvaney | |
| | Examiner | Group Art Unit | |
| | Allan Hoosain | 2742 | |

☒ Responsive to communication(s) filed on *3/15/99, 4/21/99, 7/19/99*

☒ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ____ 3 ____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

    ☒ Claim(s) *1-7* _____ is/are pending in the application.

        Of the above, claim(s) _____ is/are withdrawn from consideration.

    ☐ Claim(s) _____ is/are allowed.

    ☒ Claim(s) *1-7* _____ is/are rejected.

    ☐ Claim(s) _____ is/are objected to.

    ☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

    ☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

    ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

    ☐ The proposed drawing correction, filed on _____ is  ☐ approved  ☐ disapproved.

    ☐ The specification is objected to by the Examiner.

    ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

    ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

        ☐ All  ☐ Some*  ☐ None   of the CERTIFIED copies of the priority documents have been

            ☐ received.

            ☐ received in Application No. (Series Code/Serial Number) _____ .

            ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

        *Certified copies not received: _____

    ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

    ☒ Notice of References Cited, PTO-892

    ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

    ☐ Interview Summary, PTO-413

    ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

    ☐ Notice of Informal Patent Application, PTO-152

**— SEE OFFICE ACTION ON THE FOLLOWING PAGES —**

USR000509

Serial Number: 08/734,857                                                          Page 2

Art Unit: 2742

# DETAILED ACTION

### *Oath/Declaration*

It does not identify the post office address of each inventor and it does not say whether the given

residence address is the same as Inventor's Post Office address. A post office address is an

address at which an inventor customarily receives his or her mail and may be either a home or

business address. The post office address should include the ZIP Code designation. Appropriate

correction is required.

### *Claim Rejections - 35 USC § 103*

1.       The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

2.       Claims 1-7 rejected under 35 U.S.C. 103(a) as being unpatentable over **Schindler et al.**

(US 5,675,390).

Serial Number: 08/734,857

Page 3

Art Unit: 2742

As to Claims 1,7, with respect to Figures 6-7, 16, **Schindler et al.** teach a home entertainment

system (digital network telephony device) comprising:

a phone voice I/O, 1622, but not a telephone handset, comprising a microphone and a speaker,

said microphone being inherently connected to at least two microphone wires and said speaker

being inherently connected to at least two speaker wires (Col. 20, lines 52-54);

a computer system, Figures 1 and 3, comprising a computer sound card, 320, having an input

jack, 620, and an output jack, 618, and Mixer and Codec means, 616, for receiving and

transmitting digital audio signals, Synthesis means, 610 and 612, for compressing and

decompressing said audio signals, Modem means, 1526, for transmitting compressed audio signals

to a digital network, Modem means, 1526, for receiving compressed audio signals from said

digital network (Figure 15); and

coupling means for inherently connecting the microphone wires to the input jack and for

connecting the speaker wires to the output jack (Col. 20, lines 51-55);

**Schindler et al.'s** Phone Voice I/O, 1622, can be interpreted as a telephone set which comprises

a microphone and a speaker.  Therefore, it is obvious to one of ordinary skill in the art, at the time

the invention was made to use a telephone set in place of **Schindler et al.'s** Phone Voice I/O and

for connection to a sound card for accomplishing Applicant's invention for a telephone set to be

connected to a sound card.

Serial Number: 08/734,857                                                        Page 4

Art Unit: 2742

As to Claim 2, in addition to the information above, **Schindler et al** further teach a home

entertainment system (device) as in claim 1, wherein said coupling means for connecting the

microphone wires to the input jack and for connecting the speaker wires to the output jack

comprises inherently a cable having a phone I/O (four-wire handset jack) at a first end thereof and

two mini-phone plugs at a second end thereof, one of said mini-phone plugs being designated a

microphone plug and being connected to the microphone wires and the second of said mini-phone

plugs being designated a speaker plug and being connected to the speaker wires (Figure 16, 1622

and 320, and Figure 7, 618 and 620).

As to Claim 3, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising a resistive volume control for

controlling the loudness of the speaker (Col. 6, lines 9-23).

As to Claim 4, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising a keyboard, 126, (keytone

generator) operatively connected to the microphone wires (Figure 10 and Col. 14, lines 24-31).

As to Claim 5, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising an 'power on' external power

supply for powering said microphone (Col. 13, lines 60-65).

Serial Number: 08/734,857                                                    Page 5

Art Unit: 2742

As to Claim 6, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising toggles (an automatic bypass

switch) to deactivate any external speakers and activate the handset microphone and speaker

when the handset is in use (Col. 13, lines 54-60).


### *Response to Arguments*

3.      Applicant's arguments filed 7/19/99 have been fully considered but they are not persuasive

because of the following:

Examiner respectfully believes that all of Applicants' arguments have been considered and

addressed in Paper #5, dated 10/23/98, in the "Response to Arguments" section.


### *Conclusion*

4.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

**Kikinis et al.** (US Patent 5,799,068) teaches a telephone integrated into a computer.


5.      **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO

USR000513

Serial Number: 08/734,857                                                                Page 6

Art Unit: 2742

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the mailing date

of this final action.

6.      Any response to this **final action** should be mailed to:


        Box AF

                Commissioner of Patents and Trademarks

                Washington, D.C. 20231


        or faxed to:


                (703) 308-9051, (for formal communications; please mark "EXPEDITED

                PROCEDURE")


        Or:

Serial Number: 08/734,857                                              Page 7

Art Unit: 2742

                     (703) 308-5403 (for informal or draft communications, please label

                     "PROPOSED" or "DRAFT")

               Hand-delivered responses should be brought to Crystal Park II,  2121 Crystal Drive, Arlington. VA.,

               Sixth Floor  (Receptionist).

7.

      Any inquiry concerning this communication or earlier communications from the examiner

should be directed to **Allan Hoosain** whose telephone number is (703) 305-4012.  The examiner

can normally be reached on Monday to Friday from 7 am to 5:30 pm.

      If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

**Krista Zele**, can be reached on (703) 305-4701.

      Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 305-3900.

**Allan Hoosain**   A H

**Patent Examiner**

**August 16, 1999**

                                          FAN S. TSANG
                                        PRIMARY EXAMINER

## Notice of References Cited

| | Application No. | Applicant(s) | |
|---|---|---|---|
| | 08/734,857 | McElvaney | |
| | Examiner | Group Art Unit | |
| | Allan Hoosain | 2742 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| A | | 5,799,068 | 8/98 | Kikinis et al. | 379 | 93.06 |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |
| L | | | | | | |
| M | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| N | | | | | | | |
| O | | | | | | | |
| P | | | | | | | |
| Q | | | | | | | |
| R | | | | | | | |
| S | | | | | | | |
| T | | | | | | | |

### NON-PATENT DOCUMENTS

| | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| U | | | |
| V | | | |
| W | | | |
| X | | | |

USR000516

OIPE
MAR 15 1999
PATENT & TRADEMARK OFFICE

Sheet 1 of 1

| FORM PTO-1449 U.S. DEPARTMENT OF COMMERCE (Rev. 8-830 PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. RIPTEL9601 | SERIAL NO.08/734,857 |
|---|---|---|
| LIST OF ART CITED BY APPLICANT | APPLICANT McELVANEY | RECEIVED MAR 22 1999 |
| (Use several sheets if necessary) | FILING DATE Oct 23 1996 | Group 2700 |

## U.S. PATENT DOCUMENTS

| Examiner Initial | Document Number | | | | | | | Date | Name | Class | Subclass | Filing Date if Appropriate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AH | 5 | 5 | 1 | 5 | 4 | 2 | 3 | 5/7/96 | Beck | 379 | 93 | 12/3/93 |
| AH | 5 | 4 | 0 | 8 | 5 | 2 | 0 | 4/18/95 | Clark | 379 | 93 | 11/9/92 |
| AH | 4 | 9 | 9 | 1 | 1 | 9 | 7 | 2/5/91 | Morris | 379 | 58 | 9/1/88 |
| AH | 5 | 6 | 1 | 7 | 4 | 2 | 3 | 4/1/97 | Ping | 370 | 426 | 7/7/94 |
| AH | 5 | 6 | 0 | 6 | 5 | 9 | 9 | 2/25/97 | O'Mahony | 379 | 93.09 | 6/24/94 |
| AH | 5 | 8 | 2 | 2 | 4 | 0 | 6 | 10/13/98 | Brown | 379 | 88 | 9/26/97 |
| AH | 5 | 7 | 6 | 1 | 2 | 9 | 4 | 6/2/98 | Shaffer | 379 | 230 | 7/18/96 |

## FOREIGN PATENT DOCUMENTS

| | Document Number | | | | | | | Date | Country | Class | Subclass | Translation Yes No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Page, Etc.)

| | |
|---|---|
| | |
| | |

| Examiner Considered | ALLAN HOOSAIN | 8/16/99 Date |
|---|---|---|

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

USR000517



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: McElvaney

Serial No.:  08/734,857          Art Unit:    2742

Filing Date: October 23, 1996    Examiner: Allan Hoosain

For: Internet Telephony Device

NOTICE OF APPEAL

November 19, 1999

To Commissioner of Patents and Trademarks
Sir:

Applicant hereby appeals to the Board of Patent Appeals and
Interferences from the Examiner's decision dated August 19, 1999
finally rejecting all claims.

Applicant is a small entity; a statement of small entity status
has already been filed in this application.  Therefore the fees
should be reduced accordingly.

Authorization to charge our Deposit Account is enclosed herewith.

Respectfully submitted,

Max Stul Oppenheimer
Registration No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 706-1793

11/29/1999 SRUFFNER 00000001 150620  08734857
01 FC:219        150.00 CH

USR000518



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: McElvaney
For:    Internet Telephony Device
Filed: October 23, 1996

**Serial No.: 08/734,857     Art Unit: 2742     Examiner: A. Hoosain**

TRANSMITTAL LETTER

November 19, 1999

Honorable Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D.C. 20231

Sir:

Transmitted for filing in the above-referenced case are:

    **Appeal**
    **Certificate of Mailing**
    **Return Postcard**

Applicant is a small entity; a small entity declaration has
previously been filed in this application.

The Commissioner is authorized to charge any additional fees or
credit any overpayment to our Deposit Account No. 15-0620.  A
duplicate copy of this sheet is enclosed.


Respectfully submitted,



Max Stul Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 706-1793

**CERTIFICATE OF MAILING**
I hereby certify that the above listed attached paper(s) or fee are being deposited with the U.S.
Postal Service with sufficient first class postage on the date indicated above, addressed to the
Commissioner of Patents and Trademarks, Washington, D. C. 20231.

USR000519



# COVER PAGE

**TITLE:**        **Internet Telephony Device**

**INVENTOR(S):**       **McElvaney**

**SERIAL NO.:**       **08/734,857**

**FILING DATE:**       **October 23, 1996**

**PAPER:**       **NOTICE OF APPEAL**

**FILED:**       **November 19, 1999**

**PATENT ATTORNEY:**

**MAX STUL OPPENHEIMER**
**(Registration No. 33,203)**
**P.O. Box 50**
**Stevenson, MD  21153**
**USA**

**(410)-706-1793**

**ATTORNEY DOCKET #: RIPTEL9601**

USR000520





# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: David McElvaney
For:    Internet Telephony Device
Filed: Oct 23 1996

**Serial No.: 08/734,857  Art Unit: 2742    Examiner: Allan Hoosain**

TRANSMITTAL LETTER

January 19, 2000

Honorable Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D.C. 20231

Sir:

Transmitted for filing in the above-referenced case are:

**Appeal Brief (3 copies)
Certificate of Mailing by Express Mail
Return Postcard**

The Commissioner is authorized to charge any additional fees or credit any overpayment to our Deposit Account No. 15-0620. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

Max Stul Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 347-5232

CERTIFICATE OF MAILING BY EXPRESS MAIL

I HEREBY CERTIFY that on the date indicated above, the above documents to be filed in the above captioned application were mailed by EXPRESS MAIL, No. EI706909629US, postage prepaid to the Commissioner of Patents and Trademarks, Washington DC 20231.

EI706909629US

USR000521segment>



OIPE JC46
JAN 1 9 2000
PATENT & TRADEMARK OFFICE

## COVER PAGE -- APPEAL BRIEF

# ORIGINAL

RECEIVED
JAN 27 2000
TECH CENTER 2700

RECEIVED
JAN 27 2000
TC 2700 MAIL ROOM

**TITLE:**              Internet Telephony Device

**INVENTOR(S):**        David McElvaney

**ASSIGNEE(S):**        Riparius Ventures, Inc.

**SERIAL NO.:**         08/734,857

**FILING DATE:**        Oct 23 1996


**PAPER:**     **APPEAL BRIEF**

**FILED:**     **January 19, 2000**


**PATENT ATTORNEY:**

MAX STUL OPPENHEIMER
(Registration No. 33,203)
P.O. Box 50
Stevenson, MD  21153
USA

(410)-347-5232


**ATTORNEY DOCKET #: RIPTEL9601**

USR000522



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES


In re application of: David McElvaney
Serial No. 08/734,857                    Group Art Unit: 2742
Filing Date:  Oct 23 1996                Examiner: Allan Hoosain

For:  Internet Telephony Device


### Table of Authorities


Cases

Atmel v. Information Storage Devices, Inc. (Ct App Fed Cir 2000),
1999 US App Lexis 34441

In Re Fine, 837 F2d 1071, 5 USPQ 2d 1596 (Ct App Fed Cir 1988)

In Re Fritch, 972 F2d 1260, 23 USPQ 2d 1780 (Ct App Fed Cir 1992)

In Re Piasecki, 745 F2d 1468, 223 USPQ 785 (Ct App Fed Cir 1984)

Ex Parte Stalego, 154 USPQ 52 (Bd. App. 1966)


Statute
35 USC 103(e)

MPEP
608.01(g)

608.02(p)(5)

901.01

RECEIVED
JAN 27 2000
TC 2700 MAIL ROOM

USR000523

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re application of: David McElvaney
Serial No. 08/734,857                  Group Art Unit: 2742
Filing Date: Oct 23 1996               Examiner: Allan Hoosain
For: Internet Telephony Device

## APPEAL BRIEF

### 1.   Real Party in Interest

This application has been assigned to Riparius Ventures, Inc.

### 2.   Status of Claims

This is an appeal from the final rejection by the Examiner of
claims 1-7.  No claims have been canceled.  A copy of the claims
on appeal is attached to this Brief as Appendix I.

### 3.   Status of Amendments

There are no amendments after final.

### 4.   Summary of the Invention

In October of 1996, David McElvaney filed an application claiming
an internet telephony device.  At the time, the state of the art
for internet telephony utilized separate microphone and speakers
connected at separate locations to a computer, a technique with
the undesirable side effect of acoustic feedback and poor quality
communications.  Mr. McElvaney realized that a conventional
telephone handset could be connected to a computer's sound card
so as to allow internet telephony without acoustic feedback,
thereby resulting in higher quality voice communications over the
internet.

The claimed invention is exemplified in claim 1, as:

   A digital network telephony device comprising:

   a telephone handset comprising a microphone and a speaker,
   said microphone being connected to at least two microphone
   wires and said speaker being connected to at least two
   speaker wires;

USR000524

a computer system comprising a <u>computer sound card having an input jack and an output jack</u> and means for receiving and transmitting digital audio signals, means for compressing and decompressing said audio signals, means for transmitting compressed audio signals to a digital network, means for receiving compressed audio signals from said digital network; and

<u>means for connecting the microphone wires to the input jack and for connecting the speaker wires to the output jack</u>.

The basic features of the invention are a conventional telephone handset, connected to a computer system at one location (the system's sound card) [Application p. 6 lines 17-22, and p. 7 line 24 to p. 8 line 14]. As in conventional (i.e., separate microphone and speaker connection) systems, audio signals from the microphone are carried to the sound card and then digitized and compressed for transmission to a digital network (for example, the internet); compressed digital signals from a remote location may be received by the computer, decompressed and carried through the sound card to a speaker [Application p. 2 line 14 to p. 3 line 4]; the invention differs in that a telephone handset is used and is connected only to the system's sound card [Application, p. 8 lines 7 to 9].

Unlike the prior art, the invention makes it possible to carry on a "normal" conversation over the internet, without the prior art disadvantages of background noise, choppy communications, acoustic echo, and synchronization delay. [See description of experimental results, Application p. 9 line 12 to page 10 line 26.]


## 5.   Issues

All claims were rejected under 35 U.S.C. §103(a) as being unpatentable over Schindler et al (US Pat No 5,675,390), filed July 17, 1995 and issued October 7, 1997. The instant application was filed between the two dates.

**ISSUE 1:  What is the effective date of the Schindler reference?**

**ISSUE 2(a):  Has the Examiner established that one of ordinary skill in the art would have found it obvious to substitute a telephone handset for Element 1622 of Schindler?**

**ISSUE 2(b):  Has the Examiner established that one of ordinary skill in the art would have found it obvious to connect the telephone handset substituted for Schindler's Element 1622 to a computer sound card?**

2

USR000525

### 6. **Grouping of Claims**

For purposes of this appeal, Claims 1, 2, 3, 5 and 7 will stand or fall together.

Claims 4 and 6 will each stand or fall separately since they each incorporate additional elements not inherent in their parent claim and not disclosed in the prior art, i.e.:

>   with respect to claim 4, a keytone generator operatively connected to the microphone;

>   with respect to claim 6, an automatic bypass switch for deactivating the computer's speakers when the device is in use.

### 7. **Arguments**

The References

All of the pending claims have been rejected, under 35 USC 103, as anticipated by Schindler et al (US Patent 5,675,390, filed on July 17, 1995 and issued on October 7, 1997). The pending application was filed after the Schindler application, but before the Schindler patent issued.

The core of the rejection rests on the assertion that several of the elements of the pending claims are inherent in the Schindler disclosure. Of greatest importance, Schindler's Element 1622 (Schindler Figure 16) is asserted to represent a handset, inherently comprising a microphone and a speaker (each inherently connected to at least two wires) and inherently comprising coupling means for connecting the microphone wires to an input jack and means for connecting the speaker wires to an output jack.

Element 1622 is not labelled as a "handset" but is simply identified as a "phone/voice i/o" (and, as discussed below, appears to be a speakerphone type device, consistent with the prior art implementations of internet telephony). Applicant has tried without success to locate a written description of Element 1622 in the Schindler patent.

Without a written description of Element 1622, its function is speculative. However, a close review of Figure 16 of the Schindler patent does indicate what Element 1622 is not. Significantly, the data flow with respect to Element 1622 is illustrated by a unidirectional arrow. Since data flows in only one direction, Element 1622 cannot be a telephone handset (which

3

USR000526

requires that signals flow in two directions).

The text of Schindler (column 20, lines 54-59) states that "[a] set of amplified speakers are indicated at 1624 which are driven directly by the sound card 320 with no need for independent amplification." This appears to indicate that Schindler element 1622 is not a handset, but rather is a circuit or other means (the details of which are not specified) for allowing the device to function as a speakerphone. The pending application specifically is limited to "a telephone handset" (Claim 1, page 13 line 7 and Claim 7, page 14 line 17, all other claims being dependent on Claim 1 or Claim 7). As pointed out in the pending application (pages 2 to 5), internet telephony using a handset rather than separate speakers and microphone (i.e., a speakerphone) overcomes several disadvantages of the speakerphone configuration (e.g., background noise, choppy communications, acoustic echo, and synchronization delay). Schindler specifically requires an echo canceler (Schindler element 1518), a device which is unnecessary in a device according to Applicant's invention.

It is also significant that Element 1622 is illustrated as connected between the output of SOUND/AUDIO DSP (320) and a Modem (322) (whereas Applicant's claims all are limited to a telephone handset connected to the input and output of a soundcard).


## The Applicant's Invention

The Applicant's invention is directed to improving the quality of internet telephony by reducing the background noise, choppy communications, acoustic echo, and synchronization delay which were inherent in the prior art. [Application, page 3 line 9 - page 5 line 16; see also experimental comparison of prior art device at page 9 lines 14 - 26 with prototype according to the invention at page 10 lines 1 - 26] These objectives are accomplished by connecting a conventional telephone handset having an integrated microphone and speaker, to the sound card of a computer having means for communicating with the internet. [Application, page 6 lines 4-7; Claims 1 and 7]

While prior art devices use separate circuits and separate microphone and speakers, the Applicant's invention connects only to a computer soundcard [Application, p. 8 lines 7 to 9] and uses an integrated microphone/speaker device (a handset). Audio signals from the handset microphone are carried to the sound card and compressed for transmission to a digital network (for example, the internet); compressed digital signals from a remote location may be received by the computer, decompressed and carried through the sound card to the handset speaker. [Application p. 2 line 14 to p. 3 line 4].

4

USR000527

Unlike the prior art, the invention makes it possible to carry on
a "normal" conversation over the internet, without the prior art
disadvantages.  Unlike the Schindler patent, there is no need for
an echo canceler.


## The Rejections

All claims were rejected under 35 U.S.C. §103(a) as being
unpatentable over Schindler et al (US Pat No 5,675,390), filed
July 17, 1995 and issued October 7, 1997.  The instant
application was filed between the two dates.


## I.  Schindler is not prior art because its effective date is after the filing date of the pending application.

Schindler (the '390 patent) discloses a home entertainment system
which includes a sound card (320) having an input jack (620) and
an output jack (618), means for receiving and transmitting
digital signals (616), means for compressing and decompressing
audio signals (610 and 612) and modem means for transmitting
signals to and from an external network (1526).

Schindler also discloses, in Figure 16 (and nowhere else), an
element (1622) portrayed as a box in a schematic diagram and
labelled "phone/voice i/o" but not identified or even mentioned
in the specification.

Central to the rejections is the assertion that element 1622 of
the Schindler patent (shown in Figure 16) is a telephone-like
communication device, for which a telephone handset could have
been substituted without an inventive step.

The first issue, therefore, is whether the effective date of a
U.S. Patent cited for an element which is not mentioned in the
specification is the date of filing (in which case Schindler
would be a proper reference) or the date of issue (in which case
it would not).

Under MPEP 608.01(g) "Every feature specified in the claims must
be illustrated, but there should be no superfluous
illustrations."  Under MPEP 608.02(p)(5) "Reference characters
not mentioned in the description shall not appear in the
drawings...."

Thus, Element 1622 of the Schindler patent should not have
appeared in the drawings and therefore should not be considered
part of the patent at all -- procedurally, it should have been
canceled prior to issue.

5

USR000528

"Canceled matter in the application file of a U.S. Patent is not a proper reference as of the filing date under 35 U.S.C. 102(e)." MPEP 901.01; see Ex Parte Stalego, 154 USPQ 52, 53 (Bd. App. 1966), and therefore likewise not a proper reference as of the filing date under 35 U.S.C. 103. Instead, the appropriate prior art date for the Schindler patent is its date of issue, October 7, 1997. MPEP 901.01. Since the pending application was filed on October 23, 1996, Schindler is not a proper reference, and all pending claims should be allowed.[1]


**II.  Even if Schindler is prior art, it does not render the claimed invention obvious because (a) one of ordinary skill would not have found the substitution of a telephone handset for Element 1622 obvious; and (b) one of ordinary skill would not have found it obvious to connect a telephone handset to a computer soundcard.**

The Examiner bears the burden of establishing a prima facie case of obviousness, and can satisfy that burden "only by showing some objective teaching in the prior art or that knowledge generally available to one of ordinary skill in the art would lead that individual to combine the relevant teachings of the references." In Re Fritch, 972 F2d 1260, 23 USPQ 2d 1780 (Ct App Fed Cir 1992); In Re Fine, 837 F2d 1071, 5 USPQ 2d 1596 (Ct App Fed Cir 1988); In Re Piasecki, 745 F2d 1468, 223 USPQ 785 (Ct App Fed Cir 1984).

Thus, the Examiner must establish that it would have been obvious to one of ordinary skill in the art, at the time the application was filed, to arrive at a:

---

[1]It may be objected that while Element 1622 should have been canceled prior to issue, it was not. There is a technical response to this technical argument: applicant could bring a mandamus action against the Commissioner to enforce the mandatory duty under MPEP 608.01(g), which states that "Reference characters not mentioned in the description shall not appear in the drawings..." Applicant suggests that since Schindler makes no claim based on Element 1622 (nor could he under 35 USC 112 -- see, for example, Atmel v. Information Storage Devices (Federal Circuit decision dated January 6, 2000, 1999 U.S. App. Lexis 34441), holding that an element depicted as a "black box" rendered the claim invalid as indefinite under 35 USC 112, paragraph 2), requiring such a step would be wasteful. Should the Board conclude that Schindler is prior art unless Element 1622 is formally canceled from the drawings, Applicant requests that the matter be remanded in order to allow it to take this formal step.

USR000529

digital network telephony device comprising:

> a <u>telephone handset</u> comprising a microphone and a speaker, said microphone being connected to at least two microphone wires and said speaker being connected to at least two speaker wires;

> a computer system comprising a <u>computer sound card</u> having an input jack and an output jack and means for receiving and transmitting digital audio signals, means for compressing and decompressing said audio signals, means for transmitting compressed audio signals to a digital network, means for receiving compressed audio signals from said digital network; and

> means for <u>connecting the microphone wires to the input jack</u> and for <u>connecting the speaker wires to the output jack</u>

as recited in applicant's claim 1, and a

> device for connecting

> a <u>telephone handset</u> comprising a microphone and a speaker, said microphone being connected to at least two microphone wires and said speaker being connected to at least two speaker wires;  with

> a computer system comprising a computer sound card having an input jack and an output jack and means for receiving and transmitting audio signals, means for compressing and decompressing said audio signals, means for transmitting compressed audio signals to a digital network, means for receiving compressed audio signals from the digital network;

> said device comprising a cable comprising two microphone wires and two speaker wires, each wire having a first and a second end, said wires being connected at said first end to a plug adapted to connect to said telephone handset and being connected at said second end to a <u>plug adapted to connect to said computer sound card</u>

as recited in applicant's claim 7 (emphasis added).

For a proper 103 rejection, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to combine the teachings of the references; this motivation to combine must be found in the prior art and not based on

7

applicant's disclosure.

The examiner contends that this element "can be interpreted as a
telephone set which comprises a microphone and a speaker..." and
"[t]herefore, it is obvious to one of ordinary skill in the art,
at the time the invention was made to use a telephone set in
place of Schindler et al's Phone Voice I/O and for connection to
a sound card..." [Paper 15, page 3, emphasis added].


**II(a): One of ordinary skill would not have found the
substitution of a telephone handset for Schindler Element 1622
obvious without the benefit of applicant's disclosure.**

The Examiner contends that Schindler Element 1622 "can be
interpreted as a telephone set". Initially, applicant
respectfully observes that this contention does not meet the
claimed invention, which is directed to a "telephone handset".
Assuming, however, that the Examiner meant "telephone handset",
the contention is flatly contradicted by the affidavit of Dennis
Bogley, an industry expert with a 30 year background in
information management and telecommunications, which explains why
Element 1622 would not be interpreted as a telephone handset and
concludes "item 1622 of U.S. Patent 5,676,390 cannot be a
telephone handset, nor would it suggest to those in the
telecommunications field that a telephone handset might be
substituted for item 1622 and be operative". [affidavit of
Dennis M. Bogley, attached to March 11, 1999 Request for
Reconsideration]

The drawings in the Schindler patent clearly illustrate the data
flow with respect to Element 1622 by a unidirectional arrow. (In
other places, bidirectional arrows are used.) While it is
unknown what Element 1622 is (since it is not described in the
specification), it is not a device which involves data flow in
two directions. Thus, it cannot be a telephone handset, since
such a device would require that signals flow in two directions.
Rather, it appears from the Schindler block diagram of Figure 16,
that data flows from a sound/audio device (320), to Element 1622,
then from Element 1622 to a Modem (322). Thus, Element 1622 is
more likely to be a circuit as it is to be a telephone handset,
although any speculation as to the exact nature of Element 1622
is just that -- speculation.


**II(b): One of ordinary skill would not have found it obvious to
connect a telephone handset to a computer soundcard without the
benefit of applicant's disclosure.**

Even if Schindler is prior art, and even if the completely
undescribed unidirectional Element 1622 is considered to be a

8

bidirectional telephone handset, it still would not have been obvious to connect this device to a computer soundcard.

Element 1622 is shown as connected between the output of a SOUND/AUDIO DSP (Schindler Element 320) and a Modem (Schindler Element 322) (which would indicate transmission of an analog signal), while the claimed invention is connected to the input and output of a soundcard (which creates a digital signal).

Finally, it should be noted that Schindler teaches an echo canceler (Element 1518); one of the disadvantages of the prior art noted by applicant (Application, page 4 lines 21-25) is "acoustic echo or feedback, generated when a microphone picks up the sound from a speaker [i.e., the device, not the person] and retransmits it to the talker, whose own microphone may pick it up and retransmit it to the listener and so forth". One of the objects of the invention (Application, page 6, lines 1-2) is "to provide a system which does not generate feedback..." Thus, it appears that the Schindler device suffers from the same prior art disadvantages which applicant's invention overcomes.

In summary, in order to achieve applicant's invention, one of ordinary skill would have had to have been motivated to:

　　1. disregard the plain teaching of Schindler by using a two-way device in place of the unidirectional device;

　　2. replace the analog modem of Schindler with an untaught method of providing a digital signal from the output of the undefined element 1622;

　　3. ignore the significance of Schindler's requirement of an echo canceler;

　　4. ignore the deliberate teaching of a unidirectional connection between the sound/audio dsp and a modem, and instead make two connections to a soundcard; and

　　5. provide a means for compressing and decompressing audio data, then determine that the audio data should first be converted to digital data.

The only evidence of record is the affidavit of Mr. Bogley, which explicitly states that "item 1622 of U.S. Patent 5,676,390 cannot be a telephone handset, nor would it suggest to those in the telecommunications field that a telephone handset might be substituted for item 1622 and be operative". The Examiner has offered no argument that rebuts this evidence.

9

USR000532

**Claims 4 and 6 are separately patentable.**

Even if claims 1, 2, 3, 5 and 7 are rejected, claims 4 and 6 would be independently patentable and would not rise or fall with the other claims.

Claim 4 requires a keytone generator operatively connected to a microphone. The Examiner asserts (Paper 15, page 4) that the keyboard of Schindler is a keytone generator. Applicant respectfully contends that there is absolutely no basis for equating the computer keyboard of Schindler with a telephone keytone generator, the two devices having entirely different functions and coming from two different arts.

Claim 6 requires an automatic bypass switch. The Examiner asserts (Paper 15, page 5) that the toggle switches of Schindler constitute such an automatic bypass switch. The portion of Schindler cited by the Examiner states (column 13, lines 54-60) "Phone calls can be received or initiated by activating a 'phone' function by <u>pressing</u> one or more of the control buttons on the phone...thereby automatically muting the audio of the TV when phone function is desired." While the Examiner is correct that Schindler teaches muting a television when using a telephone, the underlined language makes clear that an affirmative action is required of the user -- it is not an "automatic" bypass as required by Claim 6.

<u>CONCLUSION</u>

For all of the foregoing reasons, it is submitted that claims 1-7 set forth a non-obvious advance over the prior art and accordingly, it is respectfully requested that the rejection of the claims be reversed.

Respectfully submitted,

Max Stul Oppenheimer
Registration No. 33,203
P. O. Box 50
Stevenson, MD  21153

Dated:  January 19, 2000

10

USR000533

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re application of: David McElvaney
Serial No. 08/734,857                    Group Art Unit: 2742
Filing Date:  Oct 23 1996                Examiner: Allan Hoosain

For:  Internet Telephony Device

## APPENDIX I - THE CLAIMS ON APPEAL

1.  A digital network telephony device comprising:

a telephone handset comprising a microphone and a speaker,
said microphone being connected to at least two microphone
wires and said speaker being connected to at least two
speaker wires;

a computer system comprising a computer sound card having an
input jack and an output jack and means for receiving and
transmitting digital audio signals, means for compressing
and decompressing said audio signals, means for transmitting
compressed audio signals to a digital network, means for
receiving compressed audio signals from said digital
network; and

means for connecting the microphone wires to the input jack
and for connecting the speaker wires to the output jack.

2.  A device as in claim 1 wherein said means for connecting the

USR000534

microphone wires to the input jack and for connecting the speaker
wires to the output jack comprises a cable having a four-wire
handset jack at a first end thereof and two mini-phone plugs at a
second end thereof, one of said mini-phone plugs being designated
a microphone plug and being connected to the microphone wires and
the second of said mini-phone plugs being designated a speaker
plug and being connected to the speaker wires.

3.  A device as in claim 1, further comprising a resistive volume
control for controlling the loudness of the speaker.

4.  A device as in claim 1, further comprising a keytone
generator operatively connected to the microphone wires.

5.  A device as in claim 1, further comprising an external power
supply for powering said microphone.

6.  A device as in claim 1, further comprising an automatic
bypass switch to deactivate any external speakers and activate
the handset microphone and speaker when the handset is in use.

7.  A device for connecting

    a telephone handset comprising a microphone and a speaker,
    said microphone being connected to at least two microphone
    wires and said speaker being connected to at least two
    speaker wires;  with

a computer system comprising a computer sound card having an
input jack and an output jack and means for receiving and
transmitting audio signals, means for compressing and
decompressing said audio signals, means for transmitting
compressed audio signals to a digital network, means for
receiving compressed audio signals from the digital network;

said device comprising a cable comprising two microphone
wires and two speaker wires, each wire having a first and a
second end, said wires being connected at said first end to
a plug adapted to connect to said telephone handset and
being connected at said second end to a plug adapted to
connect to said computer sound card.

USR000536



# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

*HO*

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/734,857 | 10/23/96 | MCELVANEY | D |

MAX STUL OPPENHEIMER
P O BOX 50
STEVENSON MD 21153

LM02/0412

| EXAMINER |
|---|
| HOOSAIN, A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2748 | 18 |

DATE MAILED:

04/12/00

**Please find below and/or attached an Office communication concerning this application or proceeding.**

**Commissioner of Patents and Trademarks**

USR000537

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
**ASSISTANT SECRETARY AND COMMISSIONER OF**
**PATENTS AND TRADEMARKS**
**Washington, D.C.  20231**

# BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES

Paper No. 18

Application Number: 08/734,857
Filing Date: 10/23/96
Appellant(s): McElvaney

**MAILED**

APR 1 2 2000

Group 2700

Max Stul Oppenheimer
For Appellant

## EXAMINER'S ANSWER

This is in response to appellant's brief on appeal filed on 1/19/2000.

*(1)    Real Party in Interest*

A statement identifying the real party in interest is contained in the brief.

*(2)    Related Appeals and Interferences*

USR000538

Application/Control Number: 08/734,857                                      Page 2

Art Unit:

The brief does not contain a statement identifying the related appeals and interferences which will directly affect or be directly affected by or have a bearing on the decision in the pending appeal is contained in the brief. Therefore, it is presumed that there are none. The Board, however, may exercise its discretion to require an explicit statement as to the existence of any related appeals and interferences.

*(3)    Status of Claims*

The statement of the status of the claims contained in the brief is correct.

*(4)    Status of Amendments After Final*

The appellant's statement of the status of amendments after final rejection contained in the brief is correct.

*(5)    Summary of Invention*

The summary of invention contained in the brief is correct.

*(6)    Issues*

The appellant's statement of the issues in the brief is correct.

*(7)    Grouping of Claims*

Appellant's brief includes a statement that claims do stand or fall together and provides reasons as set forth in 37 CFR 1.192(c)(7) and (c)(8).

Application/Control Number: 08/734,857                                        Page 3

Art Unit:

*(8)*     ***Claims Appealed***

The copy of the appealed claims contained in the Appendix to the brief is correct.

*(9)*     ***Prior Art of Record***

The following is a listing of the prior art of record relied upon in the rejection of claims

under appeal.

       5,675,390                    Schindler et al.                    10-1997

*(10)*    ***Grounds of Rejection***

The following ground(s) of rejection are applicable to the appealed claims:

Claims 1-7 are rejected under 35 U.S.C. 103(a).  This rejection is set forth in prior

Office action, Paper No. 15, dated 8/18/99 and reproduced below:

1.Claims 1-7 rejected under 35 U.S.C. 103(a) as being unpatentable over **Schindler et al.** (US

5,675,390).


As to Claims 1,7, with respect to Figures 6-7, 16, **Schindler et al.** teach a home entertainment

system (digital network telephony device) comprising:

a phone voice I/O, 1622, but not a telephone handset, comprising a microphone and a speaker,

said microphone being inherently connected to at least two microphone wires and said speaker

being inherently connected to at least two speaker wires (Col. 20, lines 52-54);

a computer system, Figures 1 and 3, comprising a computer sound card, 320, having an input

jack, 620, and an output jack, 618, and Mixer and Codec means, 616, for receiving and

USR000540

Application/Control Number: 08/734,857                                    Page 4

Art Unit:

transmitting digital audio signals, Synthesis means, 610 and 612, for compressing and

decompressing said audio signals, Modem means, 1526, for transmitting compressed audio signals

to a digital network, Modem means, 1526, for receiving compressed audio signals from said

digital network (Figure 15); and

coupling means for inherently connecting the microphone wires to the input jack and for

connecting the speaker wires to the output jack (Col. 20, lines 51-55);

   **Schindler et al.'s** Phone Voice I/O, 1622, can be interpreted as a telephone set which comprises

a microphone and a speaker.  Therefore, it is obvious to one of ordinary skill in the art, at the time

the invention was made to use a telephone set in place of **Schindler et al.'s** Phone Voice I/O and

for connection to a sound card for accomplishing Applicant's invention for a telephone set to be

connected to a sound card.


As to Claim 2, in addition to the information above, **Schindler et al** further teach a home

entertainment system (device) as in claim 1, wherein said coupling means for connecting the

microphone wires to the input jack and for connecting the speaker wires to the output jack

comprises inherently a cable having a phone I/O (four-wire handset jack) at a first end thereof and

two mini-phone plugs at a second end thereof, one of said mini-phone plugs being designated a

microphone plug and being connected to the microphone wires and the second of said mini-phone

plugs being designated a speaker plug and being connected to the speaker wires (Figure 16, 1622

and 320, and Figure 7, 618 and 620).

USR000541

Application/Control Number: 08/734,857                                Page 5

Art Unit:


As to Claim 3, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising a resistive volume control for

controlling the loudness of the speaker (Col. 6, lines 9-23).


As to Claim 4, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising a keyboard, 126, (keytone

generator) operatively connected to the microphone wires (Figure 10 and Col. 14, lines 24-31).


As to Claim 5, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising an 'power on' external power

supply for powering said microphone (Col. 13, lines 60-65).


As to Claim 6, in addition to the information above, **Schindler et al.** further teach a home

entertainment system (device) as in claim 1, further comprising toggles (an automatic bypass

switch) to deactivate any external speakers and activate the handset microphone and speaker

when the handset is in use (Col. 13, lines 54-60).

USR000542

Application/Control Number: 08/734,857

Page 6

Art Unit:

### (11)   *Response to Argument*

A: Schindler is not prior art

Applicant appears to argue that **Schindler** is not prior art because element 1622 in **Schindler** is not mentioned in the **Schindler** patent.

Examiner respectfully disagrees because element 1622 is characterized by "broken lines" and **Schindler** teaches at Col. 20, lines 52-57 and with reference to Figure 16, that:

"Elements indicated with broken lines, are advanced features which are easily implementable. They include a voice capability coupled to the sound card 320 and modem 322 for providing a separate voice channel when video conference is not desired"

This cited passage clearly refers to element 1622 which is the only element with broken lines that is connected to sound card 320 and modem 322. Therefore, the **Schindler** patent is prior art because it does mention element 1622 by referring to element 1622 as a "voice capability".

B1: Substitution of a telephone handset for Schindler element 1622 is not obvious

Applicant appears to argue that one of ordinary skill would not have found it obvious to substitute a telephone handset for **Schindler's** element 1622 and in view of Applicant's Affidavit from industry expert Dennis Bogley.

Examiner respectfully disagrees because Examiner and Examiner's Primary Examiner reviewed Mr. Dennis Bogley's Affidavit in the context of **Schindler's** teachings quoted above in (A) and disagreed with Mr. Dennis Bogley. **Schindler** teaches that element 1622 is an advanced "voice capability" feature that is "easily implemented" and it provides a "separate

USR000543

Application/Control Number: 08/734,857                                    Page 7

Art Unit:

voice channel". These teachings suggest that one of ordinary skill would conclude that

**Schindler's** element 1622 or "voice capability" could be a telephone handset.  It is common

knowledge and one of ordinary skill sill know that a telephone set is a "voice capability" used

for voice communication.

In addition, and since Element 1622 forms a voice channel, it does have two way data flow.

The difference between Applicant's Figure 1 and **Schindler's** Figure 16 is in the portrayal of

the elements.  Applicant's Figure 1 shows an external view of a computer system and

**Schindler** shows an internal functional view of a computer system.  In Applicant's Figure 1,

there is two way flow through the telephone handset, sound card and a modem.  Applicants

Figure 1 nor any of Applicant's other Figures show how Applicant's modem is connected to

Applicant's sound card.  But as shown in Applicant's Figure 1 and taught in Applicant's

Specification at Page 2, lines 20-26, two way communications does take place using

Applicant's telephone set, sound card and modem.  In a similar manner, **Schindler** teaches in

Figure 16, that two way communication is performed using element 1622 (voice capability),

sound card and a modem.  One output goes to modem 322 for transmission and one input goes

to the sound card 320 for reception.

Furthermore, **Schindler** teaches that element 1622 provides a separate voice channel when

video conferencing is not required.  This teaching supports the conclusion that element 1622

could be interpreted as a telephone handset which is used to provide voice communications that

is separate from a video conference.

USR000544

Application/Control Number: 08/734,857

Page 8

Art Unit:

## B2: Hindsight

Applicant appears to argue that it was only on the basis of Applicant's invention that Examiner is able to conclude that **Schindler's** element 1622 could be a "telephone handset".

Examiner respectfully disagrees because **Schindler's** teachings in the cited passage quoted in (A) above suggests that element 1622 is a "telephone set". For example "voice capability" suggests "telephone handset", "separate voice channel" suggests "telephone handset". In addition, **Schindler** teaches the use of speaker phones, cordless phone, and headsets at Col. 17, lines 26-42 and ear phones at Col. 18, lines 39-41. Examiner believes that **Schindler's** teachings suggests that element 1622 is a telephone handset since **Schindler** already identified speaker phone, cordless phone, ear phones and headsets. Therefore, it was not hindsight in view of Applicant's invention that Examiner concluded **Schindler's** element 1622 could be a telephone handset. Also, **Schindler's** sound card system is a digital system a clearly shown in Figure 16, label 320.

Examiner has shown that **Schindler's** element **1622** is a two-way device functioning in a digital system and that one of ordinary skill could interpret element 1622 as a telephone handset.

USR000545

Application/Control Number: 08/734,857                                    Page 9

Art Unit:

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

**Allan Hoosain** *AH*
**Patent Examiner** *Conferee:*
**April 10, 2000**

                                        *Conferee:*

2121 Crystal Drive
CPK2, 8th Floor, Room 8D06
Arlington, VA 22202

                                        KRISTA ZELE
                              SUPERVISORY PATENT EXAMINER
                                        GROUP 2700

*Conferee:*

CHAU NGUYEN
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2600

USR000546

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re application of: David McElvaney
Serial No. 08/734,857
Filing Date:  Oct 23 1996
For:  Internet Telephony Device

Group Art Unit: 2742
Examiner: Allan Hossain

## APPLICANTS' REPLY BRIEF

### 1.  Technical Response

Applicants confirm that there are no related appeals or
interferences which will directly affect or be directly affected
by or have a bearing on the decision in the pending appeal.

### 2.  Arguments in Reply

The following arguments respond to those made in the Examiner's
Brief.

### ISSUE 1 (The effective date of the sole reference)

All of the pending claims stand rejected, under 35 USC 103, as

USR000547

Reply Brief 08/734,857 Page 2

anticipated by Schindler et al (US Patent 5,675,390, filed on
July 17, 1995 and issued on October 7, 1997).  The pending
application was filed after the Schindler application, but before
the Schindler patent issued.  In their brief, Applicants argue
that since there is no written description of Element 1622 as
required by 35 USC 112, the effective date of the '390 patent, at
least with respect to Element 1622, is the date of issue and
therefore the '390 patent is not a proper reference.

In his answer (at page 6), the Examiner appears to concede that
there is no explicit reference to Element 1622 in the written
description, but argues that there is language in the '390 patent
which would allow one to infer a description of Element 1622.
Specifically, the Examiner argues that:

> Element 1622 is characterized by 'broken lines' and
> Schindler teaches at Col. 20, lines 52-57 and with reference
> to Figure 16, that:
>> 'Elements indicated with broken lines are advanced
>> features which are easily implementable.  They include
>> a voice capability coupled to the sound card 320 and
>> modem 322...'

The Examiner then argues (page 7) that "[i]t is common knowledge
... that a telephone set is a 'voice capability'..."

USR000548

Reply Brief 08/734,857 Page 3

Of course, it is a common logical fallacy to assert that because a statement is true its converse is also true. The issue is not whether a telephone set is a voice capability, but rather whether one of ordinary skill would (in this context) consider a 'voice capability' to suggest a telephone handset. Pigeons are birds, but not all birds are pigeons nor does "bird" necessarily motivate one to think of pigeons.

There is, however, an even simpler answer to the Examiner's argument. The Manual of Patent Examining Procedure states:

> "Reference characters not mentioned in the description shall not appear in the drawings...." MPEP 608.02(p)(5) (emphasis added).

The Examiner's argument (made with the benefit of hindsight) only highlights Applicant's point: the reference character (1622) does not appear in the description. Applicants do not argue that 1622 must be ignored; simply that it should not receive the preferential treatment accorded to proper elements of a U.S. patent. Since 1622 is not a proper part of the '390 patent it is not entitled to be treated as a reference until publication. Since that occurred after the filing date of the pending application, and since there are no other cited references, all claims are allowable.

USR000549

Reply Brief 08/734,857 Page 4

**ISSUE 2:** The obviousness of the claimed invention in light of the '390 patent

Even if the '390 patent is found to be a reference with respect to Element 1622 (and even if the Bogley affidavit were not of record and even if the technical arguments presented in Applicant's Brief are disregarded), the very section of the '390 patent which the Examiner relies on in his argument above illustrates why it does not render the pending claims obvious.

Each of Applicant's claims requires that both the microphone and speaker of the telephone handset be connected to the computer sound card. Therefore, accepting (solely for the sake of argument) the Examiner's assertion that a "voice capability" is a telephone handset, the language quoted above explicitly requires connection of the "voice capability" to a sound card <u>and a modem</u> (as the Examiner argues at page 7). There is no evidence of record indicating that it would have been obvious to connect both the microphone and speaker of a telephone handset to a soundcard. In fact, the Examiner asserts (page 7) that in Schindler "[o]ne output goes to modem 322 <u>for transmission</u> and one input goes to the sound card 320 <u>for reception</u>." (emphasis added) Applicants have provided, in their Brief, a detailed explanation of the technical differences between the '390 description and the claimed invention. (Notably, the '390 drawings illustrate the data flow with respect to Element 1622 as one-way, precluding it

USR000550

Reply Brief 08/734,857 Page 5

being used as a telephone handset, which requires bidirectional data flow.)

In short, the rejection rests on speculation as to the structure and function of an undescribed element and further speculation, without supporting evidence and contrary to the expert affidavit of record, as to what one of ordinary skill would have found obvious without the benefit of applicants' disclosure.

## CONCLUSION

For the foregoing reasons, and those submitted in Applicants' initial Brief, it is submitted that claims 1-7 set forth a non-obvious advance over the prior art and accordingly, it is respectfully requested that the rejection of the claims be reversed.

Respectfully submitted,

Max Stul Oppenheimer
Registration No. 33,203
P. O. Box 50
Stevenson, MD  21153

Dated: June 6, 2000

USR000551

Reply Brief 08/734,857 Page 6

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES


In re application of: David McElvaney
Serial No. 08/734,857          Group Art Unit: 2742
Filing Date:  Oct 23 1996       Examiner: Allan Hoosain

For:  Internet Telephony Device


## Table of Authorities


Statute
35 USC 112

MPEP

608.02(p)(5)

USR000552

A/F
GP2749

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: David McElvaney
For:    Internet/Telephony Device
Filed:  Oct 23 1996

**Serial No.: 08/734,857   Art Unit: 2742     Examiner: Allan Hoosain**

TECH CENTER 2700
JUN 12 2000
RECEIVED

TRANSMITTAL LETTER

June 6, 2000

Honorable Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D.C. 20231

Sir:

Transmitted for filing in the above-referenced case are:

**Applicants' Reply Brief (3 copies)**
**Authorization to Charge Deposit Account (2 copies)**
**Certificate of Mailing**
**Return Postcard**

Respectfully submitted,

Max Stul Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD   21153
(410) 347-5232

**CERTIFICATE OF MAILING**
I hereby certify that the above listed attached paper(s) or fee are being deposited with the U.S.
Postal Service with sufficient first class postage on the date indicated above, addressed to the
Commissioner of Patents and Trademarks, Washington, D. C. 20231.

USR000553



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: David McElvaney
For:    Internet Telephony Device
Filed:  Oct 23 1996

**Serial No.: 08/734,857    Art Unit: 2742    Examiner: Allan Hoosain**

Authorization to Charge Deposit Account

June 6, 2000

Honorable Commissioner of Patents and Trademarks
Patent and Trademark Office
Washington, D.C. 20231

Sir:

Transmitted for filing in the above-referenced case are:

   **Reply Brief and related documents**

The Commissioner is authorized to charge any fees relating to the
above filing or credit any overpayment to our Deposit Account No.
15-0620.  A duplicate copy of this sheet is enclosed.

Respectfully submitted,

Max Stul Oppenheimer
Reg. No. 33,203
P. O. Box 50
Stevenson, MD  21153
(410) 706-1793

USR000554

 

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|

MAX STUL OPPENHEIMER
P O BOX 50
STEVENSON MD 21153

LM41/0828

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| 2746 | 20 |

DATE MAILED:   08/28/00

**Please find below and/or attached an Office communication concerning this application or proceeding.**

**Commissioner of Patents and Trademarks**

PTO-90C (Rev. 2/95)

U.S. G.P.O. 2000 : 465-188/25288

1- File Copy

USR000555

Application/Control Number: 08/734,857                                          Page 2

Art Unit: 2748

### Response to Applicant's Reply Brief

1. The reply brief filed June 6, 2000 has been entered and considered but no further response by the Examiner is deemed necessary. The application has been forwarded to the Board of Patent Appeals and Interference for decision on the appeal.

2. Any inquiry concerning this communication or earlier communications from the Examiner should be directed to Examiner Allan Hoosain whose telephone number is (703) 305-4012.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 305-4700. The Group's official FAX number is (703) 308-6306 and unofficial FAX number is (703) 308-6296.

**Allan Hoosain**  A H

**August 28, 2000**

FAN TSANG
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2700

USR000556

The opinion in support of the decision being entered today was <u>not</u> written for publication and is <u>not</u> binding precedent of the Board.

Paper No. 21

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

_____

<u>Ex parte</u> DAVID MCELVANEY

_____

Appeal No. 2001-1944
Application No. 08/734,857

_____

. ON BRIEF

_____



**MAILED**

**MAR 3 1 2003**

**PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES**

Before THOMAS, DIXON and GROSS, <u>Administrative Patent Judges</u>.

THOMAS, <u>Administrative Patent Judge</u>.

<u>DECISION ON APPEAL</u>

Appellant has appealed to the Board from the examiner's final rejection of claims 1 through 7.

Representative claim 1 is reproduced below:

1. A digital network telephony device comprising:
(fcab(...)
a telephone handset comprising a microphone and a speaker, said microphone being connected to at least two microphone wires and said speaker being connected to at least two speaker wires;

USR000557

Appeal No. 2001-1944
Application No. 08/734,857

        a computer system comprising a computer sound card
    having an input jack and an output jack and means for
    receiving and transmitting digital audio signals, means
    for compressing and decompressing said audio signals,
    means for transmitting compressed audio signals to a
    digital network, means for receiving compressed audio
    signals from said digital network; and

        means for connecting the microphone wires to the
    input jack and for connecting the speaker wires to the
    output jack.

    The following reference is relied on by the examiner:

Schindler et al. (Schindler)    5,675,390      Oct. 07, 1997
                                               (filed Jul. 17, 1995)

    Claims 1 through 7 stand rejected under 35 U.S.C. § 103.  As

evidence of obviousness, the examiner relies upon Schindler

alone.

    Rather that repeat the positions of the appellant and the

examiner, reference is made to the brief and the answer for the

respective details thereof.

OPINION

    Since we have concluded that the examiner has failed to

establish a <u>prima facie</u> case of obviousness within 35 U.S.C.

§ 103, we reverse.

    As appellant's disclosed invention in the Summary of the

Invention at pages one and two of the brief made clear, it was

2

USR000558

Appeal No. 2001-1944
Application No. 08/734,857

well known in the art to utilize a separate microphone and
speaker connected to the sound card of a PC for purposes of
implementing internet telephony.  As expressed at the top of page
two of the principal brief on appeal, "the invention differs in
that a telephone handset is used and is connected only to the
system's sound card."

Schindler's Fig. 1 shows a home entertainment system 110
which is based upon personal computer 118 in the figure.  The
system utilizes plural remote control devices 124, 126.  These
are shown in Figs. 9 and 10 respectively.  Fig. 3 shows the
input/output to a personal computer 118 in Fig. 1, and the
input/outputs consist of two sound cards 320, 321 as well as an
RF input/output element 324.  The sound card 320 in Fig. 3 is
shown in more detail in Fig. 6 and, as noted by the examiner in
the answer, includes a microphone input 620 and speaker line
output 618.  The input/output connections themselves from Fig. 3
are shown in Fig. 7 and the sound card is also shown there with
the same speaker line output 618 and the microphone input 620 as
a part of the sound card.  Figs. 6 and 7 are discussed at column
12 of Schindler.

3

USR000559

Appeal No. 2001-1944
Application No. 08/734,857

Of Figs. 9A-9C, Fig. 9C illustrates and column 13, line 45
begins a discussion of a cordless telephone as depicted.  This is
one variation of remote control input 124, shown in Fig. 1.  The
discussion at column 14 beginning at line 15 indicates that this
unit interconnects with the personal computer 118 by the use of
RF circuitry 324 in Fig. 3 and a similar discussion was
introduced at the initial portion of column 9 as well.  The
keyboard embodiment in Fig. 10 is also discussed at the bottom of
column 13 and intercommunicates with the personal computer 118 in
Fig. 1 by the use of RF element 1040 in Fig. 10 by means of the
RF input/output portion 324 in the Fig. 3 showing of the personal
computer 118.  Part of the remote control 124 from Fig. 9C is
shown in Fig. 12 to emphasize that it communicates with the
personal computer by means of the radio frequency capability.
Note the discussion beginning at column 16, line 11.

Column 17, lines 26 through 41, noted by the examiner in the
answer, emphasizes that the implementation of the telephone
capability in these earlier figures of Schindler focuses upon
portable phones and speakerphones, the latter of which charac-
terization is consistent with appellant's assessment of the prior

4

USR000560

Appeal No. 2001-1944
Application No. 08/734,857

art in the specification as filed.  As emphasized here, both

speaker phone and cordless telephone approaches in the early

figures of Schindler all use the interconnectability of these

remote devices 124, 126 with the personal computer 118 by the use

of RF element 324 in Fig. 3 and not by the use of the sound card

320 as is required by the claims on appeal.

The discussion of Fig. 14 beginning at the bottom column 18

of Schindler indicates a Windows-based environment for imaging

various functionalities by the use of icons shown initially in

Fig. 14A.  What has not been recognized by both appellant and the

examiner is the icon showing of a conventional telephone to the

right center of this figure.  The information services icon 1412

is shown in Fig. 14B and the information services menu in Fig.

14D includes the ability for voice messages and interconnections.

The discussion at the middle of column 19 at lines 32 through 36

indicates the information services menu includes the capability

of a telephony function, but it is noted that it is tied to the

modem for voice messages.  Thus, again, there is no teaching

5

Appeal No. 2001-1944
Application No. 08/734,857

or suggestion of the use of the sound card within the PC 118 in

Figs. 1 and 3 for telephony purposes.

The speakerphone and cordless telephone approaches discussed

at column 17, lines 26 through 42 are based upon

interconnectabilities utilizing the modem only and do not appear

to teach or suggest the use of the PC 118 and its sound card 320

to implement this telephone functionality.

Figs. 15 and 16 of this reference are two different versions

of the video conferencing system. The Fig. 15 system utilizes

the ability to have microphone and speaker inputs connected to

the public telephone network PSTN generally shown as element 1510

in Fig. 15. Again, this approach does not utilize the sound card

320 of personal computer 118 in Figs. 1 and 3.

Finally, the alternative video conferencing approach unit

Fig. 16 is that portion of Schindler most relied upon by the

examiner as the basis for the telephone handset capability. The

discussion of this figure begins at the bottom half of column 20.

The dashed item 1622 in Fig. 16 is stated at column 20, lines 52

through 57 as indicating a voice capability as an optional

advanced feature.

6

USR000562

Appeal No. 2001-1944
Application No. 08/734,857


When the entirety of Schindler's disclosure is considered in
conjunction with labeled element 1622 depicting a dashed
rectangular block stating "PHONE VOICE I/O" fulfilling a
very brief discussion in the noted portions of column 20, we are
constrained to conclude, like appellant and the substance of the
affidavit from Mr. Bogley (submitted as an attachment to paper
no. 9 received on March 15, 1999) that Schindler does not teach
or suggest the use of the claimed telephone handset.  Consistent
with our earlier noted discussion with respect to the speaker-
phone and portable telephone approaches in the earlier figures of
Schindler, it appears to us that the depiction of the outgoing
arrowhead from element 1622 feeding directly the modem is
consistent with the prior approaches.  Thus, to the extent that a
phone is suggested as part of element 1622, that is, a
conventional telephone handset, it is fed directly <u>into</u> the modem
322 and not into the sound card 320.  Correspondingly, however,
any received audio in any form would appear to enter from a
public telephone line 1612 through the modem 322 to the bus 312
and outputted correspondingly to the sound card 320 to the phone

7

USR000563

Appeal No. 2001-1944
Application No. 08/734,857

according to the depiction of the arrowhead to the element 1622.

The manner in which appellant argues and the manner in which the

affidavit of Mr. Bogley conveys to us that Schindler's system

appears to work is straightforward according to the showings in

Fig. 16.

The examiner indicates at the bottom of page 7 of the answer

that "Schindler teaches in Figure 16 that two way communication

is performed using element 1622 (voice capability), sound card

and a modem.  One output goes to modem 322 for transmission and

one input goes to sound card 320 for reception."  The examiner

goes on to indicate that "[t]his teaching supports the conclusion

that element 1622 could be interpreted as a telephone handset

which is used to provide voice communications that is separate

from a video conference."

Although we agree with these general assessments of the

examiner as to these teachings and showings, the claimed

invention requires that both the microphone of the telephone

handset input be to the sound card and the output from the sound

card feed the speaker of the handset.  By the examiner's own

admission, even if we consider the designation of element 1622 in

Fig. 16 as indicating a conventional telephone handset, it is not

8

USR000564

Appeal No. 2001-1944
Application No. 08/734,857

connected in the manner required by the claims on appeal.
Appellant's remarks at the bottom of page 4 of the Reply brief
are consistent with this understanding as well as the substance
of paragraphs 5, 6 and 7 of the affidavit of Mr. Bogley.

Thus, if we were to consider the teachings and suggestions
of Schindler and any inferences that the artisan would have
reasonably derived therefrom in a light most favorably to the
examiner, the subject matter of the claimed invention still would
not have been met.  The weight of the evidence before us in the
form of Schindler as well as the affidavit of Mr. Bogley leads us
to conclude that it would not have been obvious for the artisan
to have connected a telephone handset in the manner claimed to
the sound card of a personal computer.

In order for us to sustain the examiner's rejection under
35 U.S.C. § 103, we would need to resort to speculation or
unfounded assumptions to supply deficiencies in the factual basis
of the rejections.  In re Warner, 379 F.2d 1011, 1017, 154 USPQ
173, 178 (CCPA 1967), cert. denied, 389 U.S. 1057 (1968), reh'g
denied, 390 U.S. 1000 (1968).  This we decline to do.  Here,

9

USR000565

Appeal No. 2001-1944
Application No. 08/734,857

simply put, more evidence is needed to convince us of the

obviousness of the subject matter of the claims on appeal than

for the examiner to rely upon Schindler and the examiner's own

arguments.

    Our reviewing court has made it clear in In re Lee, 277 F.3d

1338, 61 USPQ2d 1430 (Fed. Cir. 2002), and In re Zurko, 111 F.3d

887, 42 USPQ2d 1476 (Fed. Cir. 1997) that rejections must be

supported by substantial evidence in the administrative record

and that where the record is lacking in evidence, this Board

cannot and should not resort to unsupported speculation.  As

indicated in Lee, 277 F.3d at 1343-44, 61 USPQ2d at 1433-34, the

examiner's finding of whether there is a teaching, motivation or

suggestion to combine the teachings of the applied references

must not be resolved based on "subjective belief and unknown

authority," but must be "based on objective evidence of record."

    In view of the foregoing, since we are constrained to

reverse the rejection of independent claims 1 and 7 on appeal, we

must also reverse the rejection of dependent claims 2 through 6.

10

USR000566

Appeal No. 2001-1944
Application No. 08/734,857


    Therefore, the decision of the examiner rejecting claims 1 through 7 under 35 U.S.C. § 103 is reversed.

REVERSED

JAMES D. THOMAS )
Administrative Patent Judge )
    )
    )
    )
JOSEPH L. DIXON )   BOARD OF PATENT
Administrative Patent Judge )   APPEALS AND
    )   INTERFERENCES
    )
ANITA PELLMAN GROSS )
Administrative Patent Judge )


JDT/vsh


11

USR000567

Appeal No. 2001-1944
Application No. 08/734,857


MAX STUL OPPENHEIMER
P.O. BOX 50
STEVENSON, MD 21153

12

USR000568

Patent Number: 05854828    Section: Front Page    1 of 8 pages    Help



## ▲ Full Text

Go to Page:

[ ] [Go]




### Sections:
- ● Front Page
- ● Drawings
- ● Specifications
- ● Claims



US005854828A

## United States Patent [19]
### Kocis et al.

[11] Patent Number: **5,854,828**

[45] Date of Patent: **Dec. 29, 1998**

[54] **TELEPHONE CUSTOMER SUPPORT UTILITY**

[75] Inventors: **Thomas J. Kocis; Mark Larson**, both of Austin; **Charles W. Morrison**, Terrell; **Stephen K. Smith**, Spicewood, all of Tex.

[73] Assignee: **Dell U.S.A., L.P.**, Round Rock, Tex.

[21] Appl. No.: **699,845**

[22] Filed: **Aug. 20, 1996**

[51] Int. Cl.$^6$ ............................... **H04M 11/00; G06F 11/00**

[52] U.S. Cl. ................................. 379/93.31; 379/93.31; 379/93.28; 379/93.37; 395/183.01; 395/183.03; 395/183.22

[58] Field of Search ............................ 379/90.01, 93.01, 379/93.26, 93.28, 93.31, 93.37, 106.01, 102.01, 102.02, 102.03, 93.27, 93.23; 395/183.01–183.22

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,889,062 | 6/1975 | Epstein | 379/93.37 |
| 4,356,545 | 10/1982 | West | 395/183.22 |
| 4,425,625 | 1/1984 | Seligman et al. | 379/93.31 |
| 4,823,343 | 4/1989 | Takahashi | 395/183.22 |
| 5,367,667 | 11/1994 | Wahlquist et al. | 395/183.08 |
| 5,428,608 | 6/1995 | Freeman et al. | 379/93.28 |
| 5,455,933 | 10/1995 | Schieve et al. | 395/183.03 |
| 5,522,089 | 5/1996 | Kinkinis et al. | 379/93.23 |
| 5,553,123 | 9/1996 | Chan et al. | 379/102.03 |
| 5,678,002 | 10/1997 | Faucett et al. | 395/183.01 |

OTHER PUBLICATIONS

Newton's Telecom Dictionary, p. 36, Nov. 1994.

Primary Examiner—Curtis A. Kuntz
Assistant Examiner—George Eng
Attorney, Agent, or Firm—Haynes and Boone, L.L.P.

[57] **ABSTRACT**

A telephonic customer support utility for providing diagnostic support of a customer computer including encoding an operational status of a customer's computer to produce audible tones on a speaker corresponding to the encoded status for transmission on a standard telephone line via a standard telephone of the encoded operational status to a remote support computer, the remote support computer having a receiver electrically connected to receive the tones transmitted on the telephone line. The received tones are decoded by a decoder of the remote support computer to determine the operational status of the customer's computer, which status is displayed on a display of the remote support computer for analysis by a customer support technicians.

16 Claims, 3 Drawing Sheets



USR000569



# USPTO Patent Full-Text and Image Database

| Home | Quick | Advanced | Pat Num | Help |

| Bottom |

| View Cart | Add to Cart |

| Images |

( 1 of 1 )

---

**United States Patent**                                                    **5,854,828**

**Kocis , et al.**                                               **December 29, 1998**

---

## Telephone customer support utility

### Abstract

A telephonic customer support utility for providing diagnostic support of a customer computer including encoding an operational status of a customer's computer to produce audible tones on a speaker corresponding to the encoded status for transmission on a standard telephone line via a standard telephone of the encoded operational status to a remote support computer, the remote support computer having a receiver electrically connected to receive the tones transmitted on the telephone line. The received tones are decoded by a decoder of the remote support computer to determine the operational status of the customer's computer, which status is displayed on a display of the remote support computer for analysis by a customer support technicians.

---

| | |
|---|---|
| Inventors: | **Kocis; Thomas J.** (Austin, TX); **Larson; Mark** (Austin, TX); **Morrison; Charles W.** (Terrell, TX); **Smith; Stephen K.** (Spicewood, TX) |
| Assignee: | **Dell U.S.A., L.P.** (Round Rock, TX) |
| Appl. No.: | **699845** |
| Filed: | **August 20, 1996** |

---

| | |
|---|---|
| **Current U.S. Class:** | **379/93.31**; 379/93.28; 379/93.37; 714/25; 714/27; 714/46 |
| **Intern'l Class:** | H04M 011/00; G06F 011/00 |
| **Field of Search:** | 379/90.01,93.01,93.26,93.28,93.31,93.37,106.01,102.01,102.02,102.03,93.27,93.23 395/183.01-183.22 |

---

## References Cited [Referenced By]

## U.S. Patent Documents

USR000570

| 3889062 | Jun., 1975 | Epstein | 379/93. |
|---|---|---|---|
| 4356545 | Oct., 1982 | West | 395/183. |
| 4425625 | Jan., 1984 | Seligman et al. | 379/93. |
| 4823343 | Apr., 1989 | Takahashi | 395/183. |
| 5367667 | Nov., 1994 | Wahlquist et al. | 395/183. |
| 5428608 | Jun., 1995 | Freeman et al. | 379/93. |
| 5455933 | Oct., 1995 | Schieve et al. | 395/183. |
| 5522089 | May., 1996 | Kinkinis et al. | 379/93. |
| 5553123 | Sep., 1996 | Chan et al. | 379/102. |
| 5678002 | Oct., 1997 | Faucett et al. | 395/183. |

**Other References**

Newton's Telecom Dictionary, p. 36, Nov. 1994.

*Primary Examiner:* Kuntz; Curtis A.
*Assistant Examiner:* Eng; George
*Attorney, Agent or Firm:* Haynes and Boone, L.L.P.

*Claims*

What is claimed is:

1. A method for providing diagnostic support of a customer's computer using a standard telephone handset to communicate over a telecommunications network with a remote support computer, the method comprising:

encoding an operational status of the customer's computer in a manner capable of producing audible tones indicative of such operational status;

producing the audible tones on an audio speaker of the customer's computer in proximity to the telephone handset for communicating the audible tones over the telecommunications network to the remote support computer; and

receiving the audible tones communicated over the telecommunications network by the remote support computer, the remote support computer including a receiver for receiving the audible tones communicated over the telecommunications network and a decoder for decoding the audible tones into data representing the operational status of the customer's computer for enabling appropriate diagnostic functions to be determined with the remote support computer;

wherein the receiver comprises a microphone electrically connected to a sound card, wherein the microphone receives the audible tones transmitted by the telephone and the sound card generates at least one file comprising the data representative of the operational status of the customer computer.

2. The method of claim 1, wherein the step of encoding comprises encoding the operational status into modulated tone carrier (MTC) format.

3. The method of claim 1, wherein the step of encoding comprises encoding the operational status into dual tone multifrequency (DTMF) format.

USR000571



# STIC Search Report
## EIC 2600

**STIC Database Tracking Number:  93901**

**TO: FAN S TSANG**
**Location: PK2, 8R21**
**Wednesday, May 14, 2003**

**Case Serial Number:  08/734857**

**From: Pamela Reynolds**
**Location: EIC 2600**
**PK2-3C03**
**Phone: 306-0255**

**Pamela.Reynolds@uspto.gov**

## Search Notes

Dear Fan Tsang

Please find attached the search results for 08/734857. I used the search strategy I emailed to you to edit, which you did. I searched the standard Dialog files, IBM TDBs, IEEE, and the internet.

If you would like a re-focus please let me know.

Thank you.

Pamela Reynolds



```
File    9:Business & Industry(R) Jul/1994-2003/May 12
          (c) 2003 Resp. DB Svcs.
File   15:ABI/Inform(R) 1971-2003/May 13
          (c) 2003 ProQuest Info&Learning
File   16:Gale Group PROMT(R) 1990-2003/May 12
          (c) 2003 The Gale Group
File   20:Dialog Global Reporter 1997-2003/May 13
          (c) 2003 The Dialog Corp.
File   47:Gale Group Magazine DB(TM) 1959-2003/May 09
          (c) 2003 The Gale group
File   75:TGG Management Contents(R) 86-2003/May W1
          (c) 2003 The Gale Group
File   80:TGG Aerospace/Def.Mkts(R) 1986-2003/May 12
          (c) 2003 The Gale Group
File   88:Gale Group Business A.R.T.S. 1976-2003/May 12
          (c) 2003 The Gale Group
File   98:General Sci Abs/Full-Text 1984-2003/Mar
          (c) 2003 The HW Wilson Co.
File  141:Readers Guide 1983-2003/Mar
          (c) 2003 The HW Wilson Co
File  148:Gale Group Trade & Industry DB 1976-2003/May 12
          (c)2003 The Gale Group
File  160:Gale Group PROMT(R) 1972-1989
          (c) 1999 The Gale Group
File  275:Gale Group Computer DB(TM) 1983-2003/May 12
          (c) 2003 The Gale Group
File  264:DIALOG Defense Newsletters 1989-2003/May 13
          (c) 2003 The Dialog Corp.
File  484:Periodical Abs Plustext 1986-2003/May W1
          (c) 2003 ProQuest
File  553:Wilson Bus. Abs. FullText 1982-2003/Mar
          (c) 2003 The HW Wilson Co
File  570:Gale Group MARS(R) 1984-2003/May 12
          (c) 2003 The Gale Group
File  608:KR/T Bus.News. 1992-2003/May 13
          (c)2003 Knight Ridder/Tribune Bus News
File  610:Business Wire 1999-2003/May 13
          (c) 2003 Business Wire.
File  621:Gale Group New Prod.Annou.(R) 1985-2003/May 12
          (c) 2003 The Gale Group
File  623:Business Week 1985-2003/May 12
          (c) 2003 The McGraw-Hill Companies Inc
File  624:McGraw-Hill Publications 1985-2003/May 12
          (c) 2003 McGraw-Hill Co. Inc
File  634:San Jose Mercury  Jun 1985-2003/May 11
          (c) 2003 San Jose Mercury News
File  635:Business Dateline(R) 1985-2003/May 13
          (c) 2003 ProQuest Info&Learning
File  636:Gale Group Newsletter DB(TM) 1987-2003/May 12
          (c) 2003 The Gale Group
File  647:CMP  Computer Fulltext 1988-2003/Apr W3
          (c) 2003 CMP Media, LLC
File  696:DIALOG Telecom. Newsletters 1995-2003/May 12
          (c) 2003 The Dialog Corp.
File  674:Computer News Fulltext 1989-2003/May W2
          (c) 2003 IDG Communications
File  810:Business Wire 1986-1999/Feb 28
          (c) 1999 Business Wire
File  813:PR Newswire 1987-1999/Apr 30
          (c) 1999 PR Newswire Association Inc
? ds
```

USR000573

```
Set      Items    Description
S1       21360    (TELEPHONE? OR PHONE?)(3N)(HANDSET OR HAND()SET)
S2       374498   (CONNECT? OR INSERT? OR PLUG?)(5N)(COMPUTER? OR WORKSTATION
                  OR PC OR LAPTOP)
S3       51389    SOUND()CARD? OR SOUNDCARD?
S4       249992   (TWO OR 2)(3N)WIRE?
S5       1049591  SPEAKER? OR LOUDSPEAKER? OR (LOUD OR AUDIO OR MUSIC OR SOU-
                  ND)(3N)SPEAKER?
S6       130507   MICROPHONE? OR MICRO()PHONE?
S7       247      INPUT()OUTPUT(3N)JACK?
S8       194250   INTERNET(5N)TELEPHONE?
S9       58       S1(S)S2(S)S3
S10      0        S9(S)S4
S11      10       S9(S)S5(S)S6
S12      9        S11 NOT PY=>1997
S13      6        RD S12 (unique items)
S14      0        S9(S)S7
S15      0        S1(S)S7(S)S5(S)S6
S16      263      (HEADSET?? OR HEAD()SET?? OR HEADPHONE? OR HEAD()PHONE?)(S-
                  )S2(S)S3
S17      146      S16(S)S5
S18      3        S17(S)S7
S19      3        S18 NOT S11
S20      1        RD S19 (unique items)
S21      89       S17(S)S6
S22      39       S21(S)(TELEPHONE? OR PHONE?)
S23      32       S22 NOT (S11 OR S18)
S24      4        S23 NOT PY=>1997
S25      4        RD S24 (unique items)
```

USR000574

13/3,K/1      (Item 1 from file: 9)
DIALOG(R)File   9:Business & Industry(R)
(c) 2003 Resp. DB Svcs. All rts. reserv.

1293443  Supplier Number: 01293443    (USE FORMAT 7 OR 9 FOR FULLTEXT)
Digiphone answers Internet's call
(Camelot plans big things for its Mr CD-ROM Stores and its Digiphone
  communications software)
Computer Retail Week, v 5, n 112, p 55
September 25, 1995
DOCUMENT TYPE: Journal; Interview  ISSN: 1066-7598   (United States)
LANGUAGE: English  RECORD TYPE: Fulltext
WORD COUNT: 1386

     (USE FORMAT 7 OR 9 FOR FULLTEXT)

TEXT:
...personal computer's multimedia sound card.  You would then hear the
receiver's voice through **speakers** , which are also connected to the **sound
card** .  Or you could connect a headset to your **sound   card** for
"hands-free" calling.

Q: How do you actually place a call over the Internet...


13/3,K/2      (Item 1 from file: 15)
DIALOG(R)File  15:ABI/Inform(R)
(c) 2003 ProQuest Info&Learning. All rts. reserv.

01303808  99-53204
**Polycom makes noise in Internet telephony market**
Cole, Barb
Network World  v13n41  PP: 44  Oct 7, 1996
ISSN: 0887-7661  JRNL CODE: NWW
WORD COUNT: 364

...TEXT: aimed  at  individual users, and comes in two versions. An analog
edition  connects  to  a  **telephone     handset** or a PC modem. A computer
telephony  version,  dubbed  SoundPoint PC, hooks into a PC's **sound   card**
and  may  be  used  to  supply  audio to an Internet telephone or a desktop
videoconferencing  unit. SoundPoint **PC   connects** to an industry-standard
**sound    card** , and takes the place of the **speaker** and **microphone** that
are  required to  use  'Net phone software.  The  key advantage to using
SoundPoint in...


13/3,K/3      (Item 2 from file: 15)
DIALOG(R)File  15:ABI/Inform(R)
(c) 2003 ProQuest Info&Learning. All rts. reserv.

00988693  96-38086
**Headsets:  The V8-solution to increased productivity**
Margerum, Barry
Telemarketing  v13n8  PP: 67-70  Feb 1995
ISSN: 0730-6156  JRNL CODE: TLM
WORD COUNT: 1499

...TEXT: phone: plug  prong adapter (most common to operator consoles and
PBXs); modular adapter (for most **phones** except **handset** dialer styles);
RJ11 **plug** ( **connects** to **computer** modem); dual 3.5 mm **plugs** to attach

USR000575

to the **speaker** and **microphone** ports of a computer, **sound card** or modem board.

Step 3: Select The Best Headset Accessories For Increased Productivity.

First, you...


13/3,K/4      (Item 1 from file: 275)
DIALOG(R)File 275:Gale Group Computer DB(TM)
(c) 2003 The Gale Group. All rts. reserv.

01925957      SUPPLIER NUMBER: 18166528      (USE FORMAT 7 OR 9 FOR FULL TEXT)
**But wait, there's more .... (Connectware's PhoneWorks communications
  card) (TELECONNECT Editors Choice) (Hardware Review) (Evaluation)**
Graves, Lucas
Teleconnect, v14, n4, p30(1)
April, 1996
DOCUMENT TYPE: Evaluation      ISSN: 0740-9354      LANGUAGE: English
RECORD TYPE: Fulltext; Abstract
WORD COUNT:    551    LINE COUNT:   00045

...      1 or 2.
        PhoneWorks plays audio (e.g. messages, voice prompts, live
conversations) through your **telephone   handset** or **connected** to
standard **computer   speakers** . Or, an included cord lets you redirect
audio to most **sound   cards** . The card also comes with a sleek desktop
**microphone** for hands-free conversations, recording prompts, etc.
        On the software end, the included FaxWorks program...


13/3,K/5      (Item 1 from file: 636)
DIALOG(R)File 636:Gale Group Newsletter DB(TM)
(c) 2003 The Gale Group. All rts. reserv.

02422017      Supplier Number: 44812589   (USE FORMAT 7 FOR FULLTEXT)
**Interactive Inc.-New Videoconferencing System**
Interactive Facts, v1, n16, pN/A
July 4, 1994
Language: English    Record Type: Fulltext
Document Type: Newsletter; Trade
Word Count:    383

    (USE FORMAT 7 FOR FULLTEXT)
TEXT:
...which mounts on the side of the computer monitor. It has a built-in
amplified **speaker** and **microphone** for hands-free communications, a
**telephone** -style **handset** for privacy, plus an input jack for a headset
with attached **microphone** . What differentiates this model from the other
SoundXchange models is that it includes special teleconferencing...

...communications. The company's product lines include a SoundXchange Model
A for use with PC **sound   cards** such as Microsoft's Windows Sound System
and Creative Labs' Sound Blaster, SoundXchange Models B/BX which include
sound digitizing and playback hardware and **plug** into a **PC** 's parallel
printer port to allow a user to instantly add voice annotation and
messaging...


13/3,K/6      (Item 1 from file: 647)

DIALOG(R)File 647:CMP Computer Fulltext
(c) 2003 CMP Media, LLC. All rts. reserv.

01065710    CMP ACCESSION NUMBER: CRW19950925S0043
**Commonly Asked Questions About Digiphone**   (Tape backup)
COMPUTER RETAIL WEEK, 1995, n 61, PG55
PUBLICATION DATE: 950925
JOURNAL CODE: CRW      LANGUAGE: English
RECORD TYPE: Fulltext
SECTION HEADING: News
WORD COUNT: 600


...     personal computer's multimedia sound  card. You would then hear the
receiver's voice through **speakers** , which  are also connected to the
**sound   card** . Or you could connect a headset  to your  **sound   card**  for
"hands-free" calling.
       Q: How do you actually place a call over the Internet...
?

USR000577

13/7,K/1     (Item 1 from file: 9)
DIALOG(R)File   9:Business & Industry(R)
(c) 2003 Resp. DB Svcs. All rts. reserv.

1293443  Supplier Number: 01293443    (THIS IS THE FULLTEXT)
**Digiphone answers Internet's call**
**(Camelot plans big things for its Mr CD-ROM Stores and its Digiphone**
   **communications software)**
Computer Retail Week, v 5, n 112, p 55
September 25, 1995
WORD COUNT: 1386

TEXT:
EDITOR'S NOTE: Camelot, a public Dallas-based company, entered the CD-ROM
market 14 months ago with plans to be a CD-ROM retailer, publisher and
distributor.  Earlier this month, Camelot began shipping its Digiphone and
Digiphone Deluxe communications software for Windows 3.1.  Digiphone is
touted as the first commercial application that allows free long-distance,
real-time, two-way telephone conversations over the Internet.  Camelot
operates one Mr. CD-ROM Store in Dallas and expects to open five more
stores there Oct. 15.  Longer term, it expects to operate a total of 100
franchise and company-owned stores by the end of 1996.  Camelot chairman
Danny Wettreich recently met with CRW associate editor Maria V. Georgianis
to discuss Camelot's strategy.
CRW: What level of franchise interest is there in Mr. CD-ROM Stores?

WETTREICH: We have inquiries and are in various stages of negotiations with
more than 400 franchisees.  We exhibited at the International Franchise
Show in Washington, D.C. about three months ago and are still coping with
the demand that we found both nationally and internationally.

We have a vice president of franchising for Mr. CD-ROM Stores who is a
former Domino's Pizza franchising manager and has 20 years of franchising
experience.  The franchising concept is very attractive because it enables
us to grow very quickly using other people's money.

CRW: What led you to build a software-only store?

WETTREICH: We believe what the consumer wants is a broad range of products
rather than just the latest Top 300 game hits, and we feel that if we
specialize in CD-ROM and offer the convenience of local neighborhood
shopping strips, instead of having to drive to a superstore, that we'll get
a significant share of the business.

Only 10 percent of U.S. households have a CD-ROM drive at the moment, and
over the next 10 years the industry forecasts 90 percent will have a CD-ROM
drive.  I don't think everyone who walks into a store wants to buy hardware
and software.

As the hardware becomes a staple part of the consumer's inventory, his need
becomes more focused on software.

CRW: Why do you compare yourselves with Blockbuster?

WETTREICH: The early days of the video business are similar to the early
days of the CD-ROM software business in the sense that the market is
exploding in terms of consumer demand, projections for growth over the next
10 years are dramatic and competition will result in falling prices both in
terms of hardware and software.

On a long-term basis, CD-ROM software will be $4.95 to $9.95.  The

expensive software will be $14.95 to $19.95 because that's a mass market price and it will be a mass market product.

We like to think that Mr. CD-ROM Stores could potentially have the same growth possibilities that Blockbuster did. They started in Dallas with three stores; we're starting in Dallas with five.

CRW: Are there any OEM agreements for Digiphone?

WETTREICH: We're negotiating with a large number of hardware manufacturers. We want to establish a presence in the retail market before we conclude any OEM bundling arrangements.

CRW: How are you marketing the product?

WETTREICH: We have a $1 million advertising campaign to educate the consumer. There's been a tremendous amount of publicity because it's a revolutionary concept. The ability to talk long distance and not pay any long-distance charges is something that every consumer instantly recognizes.

This is a full-duplex product, which means real-time, two-way communication. It works like a phone. The other products have been half-duplex, which sounds like a walkie-talkie. We've built phone features into the software, like conference calling, caller ID and voice mail. In addition, the deluxe version offers the consumer a one-stop package for the Internet. It comes with a Web browser, telnet, ftp and e-mail.

CRW: What other types of product is Third Planet Publishing interested in developing?

WETTREICH: We're going to be focusing on upgrading Digiphone over the next six to nine months. We'll have multitasking whereby you can talk on Digiphone and transmit information on the Internet at the same time. We're also working on video conferencing capabilities. For the moment, our focus is on Internet-related software, which is not to say that will be our exclusive focus. We anticipate Third Planet will be a full-scale publishing company.

CRW: What is Camelot Distributing's advantage over an already established distributor?

WETTREICH: Camelot Distributing carries 1,500 CD-ROM titles and focuses on the independent retailer -- the mom-and-pop music, video and bookstore -- that is to some extent neglected by the larger distributors.

Camelot provides a turnkey situation so that an inexperienced retailer wanting to get into the CD-ROM industry can buy a ready-made package of CD-ROM software from us. We have 1,000 customers that are independent retailers; most of them are storefronts.

Commonly Asked Questions About Digiphone

EDITOR'S NOTE: Where better to get information on Camelot's newly released Digiphone product than on the Internet itself? Following are excepts from a technical briefing provided by the company on a special Digiphone World Wide Web site.

Q: What is Digiphone?

Digiphone, The Internet Digital Phone System is the world's first full-duplexing digital telephone system for the Internet. Along with allowing you to use the Internet to place long-distance calls, Digiphone

USR000579

supports voice encryption, conference calling, call screening and voice
messaging. Digiphone comes with a Mosaic-like interface for accessing the
Internet -- including data, electronic mail, conferences, Web sites, music,
images, software programs and more.

Q: What needs does Digiphone address?

A: By using the Internet, instead of long-distance phone lines, Digiphone
makes voice conversations possible for no more than the cost of a monthly
Internet connection (typically $15 to $30). By contrast, overseas calls
from the U.S. over the major carrier could average $30 per hour.

Q: Is Digiphone a hardware or software product?

A: Digiphone is a Windows software product for use on multimedia-equipped
PCs.

Q: Is there a Macintosh version?

A: A Macintosh and OS/2 version of Digiphone will be available shortly
after the release of the Windows version.

Q: How is the sound quality?

A: Sound quality varies depending on the level of data compression you
select and the hardware you are using. At minimum compression, sound is
noticeably better than over standard phone lines. However, depending on
your system, minimum compression (more data, maximum fidelity) may cause a
time lag, depending on the speed of your modem. If you choose maximum
compression (less data, minimum fidelity) then delays are less likely.
Maximum compression sounds like a cellular phone call. Maximum compression
on a 486, with 14.4 modem is more than adequate for normal conversation.
Q: What are the hardware and software requirements for Digiphone?

A: Digiphone will work with almost any multimedia personal computer sold
today. Specific minimum system requirements are: a 386 system (486 or
Pentium recommended), 9600-bps modem (14.4 or 28.8 recommended), 4M bytes
of RAM, Windows 3.1, a duplexing sound card, speakers and microphone,
local Internet connection with SLIP protocol (Serial Line Interface
Protocol) or P.P.P. (Point-to-Point Protocol).

Q: Will Digiphone only work over the Internet?

A: No. Digiphone can also be used on wide area networks (WANs) and local
area networks (LANs).

Q: How is using Digiphone different from using a regular telephone?

A: Instead of lifting a telephone receiver, you speak into a microphone
connected to your personal computer's multimedia sound card. You would
then hear the receiver's voice through **speakers** , which are also connected
to the **sound    card** . Or you could connect a headset to your **sound
card** for "hands-free" calling.
Q: How do you actually place a call over the Internet with Digiphone?

A: To place a call with Digiphone, just enter the name and Internet address
of the person you want to reach. Digiphone will log onto the Internet and
make the connection.

If your party is online at the same time you are, they will receive
notification and can then take your call. If you place a call while your

USR000580

party isn't online, Digiphone will give you the option of leaving text or a
voice-mail message in their regular Internet mailbox

Q: How does Digiphone use the Internet?  Does it use the IRC sites?  Is it
SLIP-to-SLIP or PPP?

A: Digiphone goes SLIP-to-SLIP or P.P.P.  It does not rely on the IRC sites
in any way.

Q: What kind of compression doe Digiphone use?

A: Digiphone uses proprietary compression scheme algorithms.

                Copyright 1995 CMP Publications, Inc.


     (USE FORMAT 7 OR 9 FOR FULLTEXT)

TEXT:
...personal computer's multimedia sound card.  You would then hear the
receiver's voice through **speakers** , which are also connected to the **sound
  card** .  Or you could connect a headset to your **sound    card** for
"hands-free" calling.

Q: How do you actually place a call over the Internet...


  **13/7,K/2      (Item 1 from file: 15)**
DIALOG(R)File · 15:ABI/Inform(R)
(c) 2003 ProQuest Info&Learning. All rts. reserv.

01303808  99-53204
                   **USE FORMAT 9 FOR FULL TEXT**
**Polycom makes noise in Internet telephony market**

ABSTRACT:  Polycom Inc.'s new SoundPoint audioconferencing unit is aimed at
individual  users  and comes in 2 versions. An analog edition connects to a
telephone  handset  or  a  PC  modem.  A computer telephony version, dubbed
SoundPoint PC, hooks into a PC's sound card and may be used to supply audio
to  an  Internet  telephone  or a desktop videoconferencing unit. Polycom's
other new  offering,  SoundStation  Premier,  is a high-end version of the
company's flagship conference phone that offers audio quality rivaling that
of a handset phone.

Cole, Barb
Network World  v13n41  PP: 44  Oct 7, 1996  ISSN: 0887-7661  JRNL CODE: NWW
DOC TYPE: Journal article  LANGUAGE: English  LENGTH: 1 Pages
WORD COUNT: 364

...TEXT:  aimed  at  individual users, and comes in two versions. An analog
edition  connects  to  a  **telephone    handset** or a PC modem. A computer
telephony  version,  dubbed  SoundPoint PC, hooks into a PC's **sound    card**
and  may  be  used  to  supply  audio to an Internet telephone or a desktop
videoconferencing  unit. SoundPoint **PC  connects** to an industry-standard
**sound    card** , and takes the place of the **speaker** and **microphone** that
are  required  to  use  'Net  phone  software.  The  key advantage to using
SoundPoint in...


  **13/7,K/3      (Item 2 from file: 15)**

USR000581

DIALOG(R)File  15:ABI/Inform(R)
(c) 2003 ProQuest Info&Learning. All rts. reserv.

00988693  96-38086
           **USE FORMAT 9 FOR FULL TEXT**
**Headsets:  The V8-solution to increased productivity**

ABSTRACT: Assuming an average phone transaction time of 3.2 minutes where
tasks requiring 2 hands are performed during the call, using a headset
increased productivity up to 43%. Call placement/response time with
headsets was cut by 44%, call response time by 72%, and hang-up time by
59%. Pain and stiffness in the neck and upper back area are commonly caused
by having to cradle the phone while writing or typing on a computer. Steps
to use in selecting a headset include: 1. evaluating the workpoint
environment, 2. identifying the correct adapter plugs, and 3. selecting the
best headset accessories for increased productivity.

Margerum, Barry
Telemarketing v13n8 PP: 67-70 Feb 1995 ISSN: 0730-6156 JRNL CODE: TLM
DOC TYPE: Journal article  LANGUAGE: English LENGTH: 4 Pages
WORD COUNT: 1499

...TEXT:  phone:  plug  prong adapter (most common to operator consoles and
PBXs); modular adapter (for most **phones** except **handset** dialer styles);
RJ11 **plug** ( **connects** to **computer** modem); dual 3.5 mm **plugs** to attach
to the **speaker** and **microphone** ports of a computer, **sound** **card** or
modem board.

Step 3: Select The Best Headset Accessories For Increased Productivity.

First, you...


 **13/7,K/4**    (Item 1 from file: 275)
DIALOG(R)File 275:Gale Group Computer DB(TM)
(c) 2003 The Gale Group. All rts. reserv.

01925957    SUPPLIER NUMBER: 18166528    (THIS IS THE FULL TEXT)
**But wait, there's more .... (Connectware's PhoneWorks communications
card)(TELECONNECT Editors Choice) (Hardware Review)(Evaluation)**
Graves, Lucas
Teleconnect, v14, n4, p30(1)
April, 1996

TEXT:
     Connectware's (Richardson, TX--214-907-1093) PhoneWorks 28.8 package
is part of the first generation of PC communications hardware that takes
advantage of shrinking chips and falling prices to combine what used to be
several different products into one.
     PhoneWorks offers a 28.8 kbps modem, a 14.4 kbps fax and a
DTMF-detecting voice unit. all on a three-quarters length, eight-bit ISA
card. The V.34 modem supports industry-standard error correction
(V.42/MNP1-4 and 10) and data compression (V.42 bis/MNP5); the fax is V.17
Group III, Class 1 or 2.
     PhoneWorks plays audio (e.g. messages, voice prompts, live
conversations) through your **telephone** **handset** or **connected** to
standard **computer** **speakers** . Or, an included cord lets you redirect
audio to most **sound** **cards** . The card also comes with a sleek desktop
**microphone** for hands-free conversations, recording prompts, etc.
     On the software end, the included FaxWorks program packs a PC phone,

USR000582

1,000 boxes of voicemail, audiotex, fax-on-demand and fax broadcasting, on top of a full-featured terminal emulator for standard data communications. Everything is managed through one Windows (3.1 or 95) interface, Call Center. INSTALLATION AND SETUP FaxWorks configures itself by scanning your COM ports to see what hardware you have and its capabilities.

Customizing the voicemail, audiotex and fax-on-demand is also fairly intuitive through the Call Center interface-we barely cracked the manual. A simple dialogue box lets you create a new mailbox, record its greeting and set a password. Once your mailbox is set up, other pop-up dialogues make it easy to do anything from changing the message to setting up a personal faxon-demand service.

Disk-space permitting, every mailbox (up to 1,005) can have 10 private fax-on-demand documents associated with it, each with its own voice description. In addition, you can store 10 documents (and their descriptions) in a fax library accessible from the main greeting, and another 1,000 for retrieval with individual document codes and pass words. The system stores up to 1,000 audiotex messages accessed with passwords.

FaxWorks sports many of the features of stand-alone voicemail systems. Callers can send a public fax through the main greeting, or to an individual mailbox (attached to a voice message). Box holders can retrieve their messages and faxes remotely. or have them automatically forwarded to any number. Remote users can also program their voicemail to issue a numeric page when calls come in, coded to tell you the number of messages/faxes received.

Our only complaint: PhoneWorks can take several seconds to cue up a voice prompt or react to DTMF input. We also noticed that there is no way to disable the two-call, fax-on-demand option if you don't want to pay for long-distance document requests. (Connectware says future versions of FaxWorks will include this option.)

With a single-line communications product, there really is no practical way to run voice, fax and data traffic on one CO line without isolating your office behind a wall of busy signals. So look to PhoneWorks as a lowcost-$299 suggested retail-highspeed fax/modem and consider the voice capabilities a free bonus.)

COPYRIGHT 1996 Telecon Library Inc.

...      1 or 2.

PhoneWorks plays audio (e.g. messages, voice prompts, live conversations) through your **telephone  handset** or **connected** to standard **computer  speakers** . Or, an included cord lets you redirect audio to most **sound  cards** . The card also comes with a sleek desktop **microphone** for hands-free conversations, recording prompts, etc.

On the software end, the included FaxWorks program...

**13/7,K/5       (Item 1 from file: 636)**
DIALOG(R)File 636:Gale Group Newsletter DB(TM)
(c) 2003 The Gale Group. All rts. reserv.

02422017    Supplier Number: 44812589   (THIS IS THE FULLTEXT)
**Interactive Inc.-New Videoconferencing System**
Interactive Facts, v1, n16, pN/A
July 4, 1994
TEXT:
InterActive Inc. announced today its new SoundXchange Model T which is designed specifically for the rapid growth videoconferencing/telephony market. The Company anticipates that this new model SoundXchange could become the standard "Model T" for widespread use for all computer telephone integrated voice applications on the information superhighway. The patented SoundXchange Model T, like the other models of InterActive's popular SoundXchange, is designed as a conference-style business telephone which

USR000583

mounts on the side of the computer monitor. It has a built-in amplified **speaker** and **microphone** for hands-free communications, a **telephone** -style **handset** for privacy, plus an input jack for a headset with attached **microphone** . What differentiates this model from the other SoundXchange models is that it includes special teleconferencing circuitry for use with videoconferencing and computer telephony boards. The SoundXchange Model T can be instantly switched from multimedia mode for voice annotation/messaging to teleconferencing mode for use in videoconferencing. Teloquent, a leading developer of software-based telecommunications systems, was a beta test site for the SoundXchange Model T. Mr. David Penzias, Vice President of Marketing for Teloquent, stated: "Businesses are discovering that computer -telephone integration is a key element to improving productivity and reducing costs, while at the same time increasing customer service." He concluded by saying that "We had been searching for the right telephone-style hardware solution for a long time before finding InterActive's SoundXchange Model T. It is the perfect solution for the integration of telephone and computer technology." InterActive designs, manufactures and markets personal computer- based multimedia products for business communications. The company's product lines include a SoundXchange Model A for use with PC **sound cards** such as Microsoft's Windows Sound System and Creative Labs' Sound Blaster, SoundXchange Models B/BX which include sound digitizing and playback hardware and **plug** into a **PC** 's parallel printer port to allow a user to instantly add voice annotation and messaging capabilities without opening the PC, M-Message software to upgrade standard e-mail packages such as cc:Mail and Microsoft Mail with full multimedia capabilities, M-Mail software which is a full featured multimedia electronic mail application, InterActive Communicator upgrade kits which include hardware and software for PC based telephone, voice messaging, fax, modem and multimedia applications, and fully integrated, voice- activated InterActive Communicator systems for the computer telephone integrated (CTI) market.
   Copyright 1994 SCTT Markering Inc.
   THIS IS THE FULL TEXT: COPYRIGHT 1994 SCTT Marketing Inc. Subscription: $150 per year as of 6/94. Published 26 times per year. Contact SCTT Marketing Inc., P.O. Box 443, Lake Forest, IL 60045. Phone (708) 615-7288. FAX (708)615-7289.
   COPYRIGHT 1999 Gale Group

   (USE FORMAT 7 FOR FULLTEXT)
TEXT:
...which mounts on the side of the computer monitor. It has a built-in amplified **speaker** and **microphone** for hands-free communications, a **telephone** -style **handset** for privacy, plus an input jack for a headset with attached **microphone** . What differentiates this model from the other SoundXchange models is that it includes special teleconferencing...

...communications. The company's product lines include a SoundXchange Model A for use with PC **sound cards** such as Microsoft's Windows Sound System and Creative Labs' Sound Blaster, SoundXchange Models B/BX which include sound digitizing and playback hardware and **plug** into a **PC** 's parallel printer port to allow a user to instantly add voice annotation and messaging...


 **13/7,K/6      (Item 1 from file: 647)**
DIALOG(R)File 647:CMP  Computer Fulltext
(c) 2003 CMP Media, LLC. All rts. reserv.

01065710   CMP ACCESSION NUMBER: CRW19950925S0043
**Commonly Asked Questions About Digiphone**  (Tape backup)

USR000584

COMPUTER RETAIL WEEK, 1995, n 61, PG55
PUBLICATION DATE: 950925
JOURNAL CODE: CRW    LANGUAGE: English
SECTION HEADING: News
TEXT:
    Editor's Note: Where better to get information on Camelot's newly
released Digiphone product than on the Internet itself? Following are
excepts from a technical briefing provided by the company on a special
Digiphone World Wide Web site.
    Q: What is Digiphone?
    A: Digiphone, The Internet Digital Phone System, is the world's
first full-duplexing digital telephone system for the Internet. Along  with
allowing you to use the Internet to place long-distance calls,  Digiphone
supports voice encryption, conference calling, call  screening and voice
messaging. Digiphone comes with a Mosaic-like  interface for accessing the
Internet-including data, electronic mail,  conferences, Web sites, music,
images, software programs and more.
    Q: What needs does Digiphone address?
    A: By using the Internet, instead of long-distance phone lines,
Digiphone makes voice conversations possible for no more than the cost  of
a monthly Internet connection (typically $15 to $30). By contrast,
overseas calls from the U.S. over major carriers could average $30  per
hour.
    Q: Is Digiphone a hardware or software product?
    A: Digiphone is a Windows software product for use on multimedia-
equipped PCs.
    Q: Is there a Macintosh version?
    A: A Macintosh and OS/2 version of Digiphone will be available
shortly after the release of the Windows version.
    Q: How is the sound quality?
    A: Sound quality varies depending on the level of data compression
you select and the hardware you are using. At minimum compression,  sound
is noticeably better than over standard phone lines. However,  depending on
your system, minimum compression (more data, maximum  fidelity) may cause a
time lag, depending on the speed of your modem.  If you choose maximum
compression (less data, minimum fidelity) then  delays are less likely.
Maximum compression sounds like a cellular  phone call. Maximum compression
on a 486, with 14.4 modem is more than  adequate
for normal conversation.
    Q: What are the hardware and software requirements for Digiphone?
    A: Digiphone will work with almost any multimedia personal computer
sold today. Specific minimum system requirements are: a 386 system ( 486 or
Pentium recommended), 9600-bps modem (14.4 or 28.8 recommended) , 4M bytes
of RAM, Windows 3.1, a duplexing sound card, speakers and microphone, a
local Internet connection with SLIP protocol (Serial  Line Interface
Protocol) or P.P.P. (Point-to-Point Protocol)
    Q: Will Digiphone only work over the Internet?
    A: No. Digiphone can also be used on wide area networks (WANs) and
local area networks (LANs)
    Q: How is using Digiphone different from using a regular telephone?
    A: Instead of lifting a telephone receiver, you speak into a
microphone connected to your personal computer's multimedia sound  card.
You would then hear the receiver's voice through **speakers** , which  are
also connected to the **sound  card** . Or you could connect a headset  to
your **sound   card** for "hands-free" calling.
    Q: How do you actually place a call over the Internet with
Digiphone?
    A: To place a call with Digiphone, just enter the name and Internet
address of the person you want to reach. Digiphone will log onto the
Internet and make the connection.
    If your party is online at the same time you are, they will receive

notification and can then take your call. If you place a call while  your
party isn't online, Digiphone will give you the option of leaving  text or
a voice-mail message in their regular Internet mailbox.
     Q: How does Digiphone use the Internet? Does it use the IRC sites?
Is it SLIP-to- SLIP or PPP?
     A: Digiphone goes SLIP-to-SLIP or P.P.P. It does not rely on the  IRC
sites in any way.
     Q: What kind of compression does Digiphone use?
     A: Digiphone uses proprietary compression scheme algorithms.

...     personal computer's multimedia sound  card. You would then hear the
receiver's voice through  **speakers** , which  are also connected to the
**sound   card** . Or you could connect a headset  to your  **sound    card** for
"hands-free" calling.
     Q: How do you actually place a call over the Internet...
?

USR000586